**NOT FOR PUBLICATION**
File Name: 09a0658n.06

No. 07-1220

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 24, 2009**
LEONARD GREEN, Clerk

*In re:* **FREDERICK J. SMITH,** Movant

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____/

BEFORE:     BATCHELDER, Chief Judge, SUHRHEINRICH and SUTTON, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.**  In this § 1983 action, Petitioner Frederick J. Smith

seeks an order directing state officials to produce for DNA testing the physical evidence collected

in the investigation underlying his state criminal conviction.  We hold that the district court lacked

jurisdiction on the basis of the *Rooker-Feldman* doctrine, and **DISMISS** this action.

## I.  Background

On March 9, 1984, Smith was found guilty by a jury of first-degree criminal sexual conduct,

armed robbery, and possession of a firearm during the commission of a felony.  The prosecution's

case consisted of the testimony of the complainant and the admission of blood-type evidence, which

indicated that the assailant possessed type B blood.  Smith, an African-American man, possesses type

B blood, as does twenty percent of the African-American population.  The evidence was tested in

1984 through a procedure known as "electrophoresis analysis," which is no longer used nor generally

accepted by the scientific community.

Smith presented five alibi witnesses–four family members and a friend–who testified that Smith was in a different part of Detroit at or near the time of the offense. *See People v. Smith*, 385 N.W.2d 654, 656 (Mich. Ct. App. 1986).

Smith was sentenced to two years in prison on the felony conviction, thirty to sixty years in prison for the sex offense, and ten to twenty years for armed robbery. His conviction was affirmed on appeal. *See Smith*, 385 N.W.2d at 655. The Michigan Supreme Court denied leave to appeal. *See People v. Smith*, No. 78173 (Mich. Sept. 28, 1986).

On November 29, 2001, Smith filed a petition for writ of habeas corpus in federal district court. The district court dismissed the action based upon the one-year statute of limitations found in 28 U.S.C. § 2244(d)(1). *See Smith v. Jones*, No. 01-CV-74504-DT, 2002 WL 31875516 (E.D. Mich. Nov. 26, 2002).

On August 30, 2005, Smith filed a petition for DNA testing in Wayne County Circuit Court pursuant to Mich. Comp. Laws § 770.16. The statute provides, in pertinent part:

(3) The court shall order DNA testing if the defendant does all of the following:

(a) Presents prima facie proof that the evidence sought to be tested is material to the issue of the convicted person's identity as the perpetrator of . . . the crime that resulted in the conviction.

(b) Establishes all of the following by clear and convincing evidence:

(i) A sample of identified biological material . . . is available for DNA testing.

(ii) The identified biological material . . . was not previously subjected to DNA testing or, if previously tested, will be subject to DNA testing technology that was not available when the defendant was convicted.

(iii) The identity of the defendant as the perpetrator of the crime was at issue during his or her trial.

Mich. Comp. Laws § 770.16(3) (2005) (amended 2006).

The state trial court denied Smith's motion, holding that Smith "failed to present prima facie proof that the evidence sought to be tested is material to the issue of identification in this case." *People v. Smith*, No. 83006566-01 (Order of the Court, dated Oct. 18, 2005). Smith did not appeal this decision.

Instead, on January 16, 2007, Smith sued Kym Worthy, Prosecuting Attorney of Wayne County, Michigan, and Judge Prentis Edwards, Judge of the Wayne County Circuit, in federal district court pursuant to 42 U.S.C. § 1983. Smith alleged that his constitutional rights were violated by Defendants' refusal to order DNA testing in his case and sought injunctive relief directing the state officials to conduct DNA testing.

The district court *sua sponte* deemed Smith's action as a second or successive petition for habeas relief and transferred the matter to this Court pursuant to 28 U.S.C. § 2244(b)(3)(A) for authorization to file a second or successive habeas petition. We held the matter in abeyance pending the Supreme Court's decision in *Dist. Att'y's Office for the Third Judicial Dist. v. Osborne*, – U.S. –, 129 S. Ct. 2308 (June 18, 2009), in which the Supreme Court granted certiorari to consider the same issue raised by Smith.

The Supreme Court did not ultimately decide this question but simply *assumed* that a petitioner could raise this claim under § 1983 and reached the ultimate issue of "whether [a petitioner] has a right under the Due Process Clause to obtain postconviction access to the State's evidence for DNA testing." 129 S. Ct. at 2316, 2319. The majority held that a convicted prisoner

does not have a freestanding constitutional right to DNA evidence. 129 S. Ct. at 2322. Rather, the majority held that, at most, a prisoner *may* have a *procedural* due process right to the proper application of a state-created right. *Id.* 2319-20.

## II. Analysis

As in every case, we must at the outset consider our jurisdiction over this appeal. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). As noted above, Smith did not appeal the decision of the state trial court denying his motion for DNA testing. Thus, the question becomes whether this appeal is barred under the *Rooker-Feldman* doctrine. Under that doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Marks v. Tennessee*, 554 F.3d 619, 622 (6th Cir. 2009) (internal quotation marks and citation omitted). This is so "[b]ecause [28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The Supreme Court recently explained that the *Rooker-Feldman* doctrine occupies "narrow ground," namely, that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. It does not bar "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction," and *Rooker-Feldman* does not apply. *Id.* (quotation omitted).

This Court "has interpreted that limitation to mean that the *Rooker-Feldman* doctrine applies only when a plaintiff complains of injury from the state-court judgment itself." *Carter v. Burns*, 524 F.3d 796, 798 (6th Cir. 2008) (internal quotations marks and citation omitted). The pertinent inquiry after *Exxon* is the "source of the injury" the plaintiff alleges in the federal complaint. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

> The inquiry [focuses on] the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id. See also Lawrence v. Welch*, 531 F.3d 364, 368-69 (6th Cir. 2008), *reh'g en banc denied*, Feb. 9, 2009, *petition for cert. filed*, 78 U.S.L.W. 3058 (July 9, 2008) (No. 09-48) (same). *See also Hamilton v. Herr*, 540 F.3d 367, 372 (6th Cir. 2008) (stating that "what the *Rooker-Feldman* doctrine primarily bars are claims that seek relief from injury 'caused by' the state court judgment"; internal quotation marks and citation omitted).

The doctrine does not apply to parallel state and federal litigation, *Marks*, 554 F.3d at 622 (citing *Exxon*, 544 U.S. at 292), nor to "judicial review of executive action, including decisions by state administrative agen[cies]," *id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002)), or to claims of improper conduct by third parties in connection with the state proceedings, *see Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 437 (6th Cir. 2006) (alleging that the plaintiff's harm was caused by the defendant's false affidavit, not by the state court's decision in the garnishment proceedings). And it "does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely a general challenge to the constitutionality of the state law applied in the state action, rather than a challenge to the law's

-5-

application in a particular state case." *Carter,* 524 F.3d at 798 (internal quotations marks and citation omitted).

In his § 1983 complaint, Smith alleges first that Defendants' failure to comply with Mich. Comp. Laws § 770.16 violated his right to due process of law under the Fifth and Fourteenth Amendments, and second, that Defendants' "failure/refusal to allow DNA testing of critical biological evidence violates Plaintiff's procedural and substance Due Process clause rights guaranteed by the 14th Amendment." The gravamen of Smith's § 1983 complaint, then, is that Defendants' violated his constitutional rights by denying the statutory DNA testing. Thus, the "source of the injury" in this case is the state trial court order that denied Smith access to DNA testing. That is, by complaining that the state trial court wrongfully denied him the DNA evidence because rejection of his petition was improper –but not complaining that the statute itself is flawed– Smith is "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," which is clearly barred by *Rooker-Feldman*. *Exxon*, 544 U.S. at 291.[1] *See also Carter*, 524 F.3d at 799 (holding that the district court properly dismissed the plaintiff's as-applied challenge to the constitutionality of the Tennessee collateral review statutes under *Rooker-Feldman*); *cf. id.* at 798-99 (holding that the district court erred in dismissing the plaintiff's facial challenge to the constitutionality of the Tennessee collateral review statutes).

Even if Smith's civil rights claim presents an independent basis for the exercise of federal court review, it fails for several reasons. First, the Supreme Court held in *Osborne* that there is no

---

[1]As we recently observed in similar case, Smith cannot "use the statutory skeleton of federal civil rights law to appeal to the district court and ultimately overturn the decision of the state courts. This is the precise type of state-court reversal prohibited by the *Rooker-Feldman* doctrine. As such, it is a direct attack on a state court judgment and therefore barred by *Rooker-Feldman*." *Briscoe v. Jackson*, 285 F. App'x 205, 207 (6th Cir. June 27, 2008).

freestanding substantive due process right to DNA testing. *Osborne*, 129 S. Ct. at 2322. Second, any procedural due process claim is also untenable because Michigan's statutory scheme is more comprehensive than the state procedures sanctioned by the *Osborne* Court. *Cf. id.* at 2320 ("We see nothing inadequate about the procedures Alaska has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence."). Third, such federal claims likely would be foreclosed under res judicata principles, *see Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 487-88 (1983) (leaving open question of whether doctrine of res judicata forecloses litigation on elements of federal complaints at issue); *Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004) (stating that "even where a general constitutional attack is mounted, the state proceedings may foreclose the federal claim under the doctrine of res judicata"), and applicable immunity doctrines, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding that a suit against a state official in his or her official capacity is a suit against the state itself and not cognizable under § 1983); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (noting that judicial immunity protects the judicial function by affording absolute immunity); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (holding that prosecutors have absolute immunity).

We recognize that the Second Circuit has reached a different conclusion on virtually indistinguishable facts. *See McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007). After being convicted of attempted murder and related charges, McKithen sought DNA testing in Queens County Court pursuant to a New York statute which provided that "the court shall grant the application of forensic DNA testing of such evidence" if there existed "a *reasonable probability*" that with the evidence "the verdict would have been *more favorable* to the defendant." *Id.* at 94 (quoting N.Y. Crim. Proc.

Law § 440.30(1-a)(a) (emphases added in *McKithen*)). In his federal § 1983 claim, McKithen claimed that the district attorney violated his constitutional right to post-conviction access for DNA testing and sought injunctive relief directing testing of the knife allegedly used to commit the crime. *Id.* The district court dismissed on the basis of *Rooker-Feldman*. *Id.* at 95. The Second Circuit reversed, reasoning that because the injury for which McKithen sought federal court redress "existed in its exact form prior to the state-court judgment," it could not be "an injury 'caused by' the state court." *Id.* at 98. Instead, the injury was "properly understood to have been simply ratified, acquiesced in, or left unpunished by [the state court]." *Id.* (internal quotation marks and citation omitted).[2]

We disagree with this reasoning. In our view, the "injury" in *McKithen*, as well as the injury in this case, did not in fact exist until the state prisoner was denied the requested DNA testing by the state court under the applicable state statutes. *Cf. McCormick*, 451 F.3d at 395 (holding that probate court's order of receivership violated the plaintiff's constitutional rights as an unlawful seizure and was barred because "the count alleges that the state court order itself was illegal and harmed [the plaintiff]").[3] For this reason, we decline to adopt the Second Circuit's approach in this case.

---

[2]The Second Circuit interpreted *Exxon Mobil* as requiring a plaintiff to complain of "an injury caused by a state-court judgment," and explained that "'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *McKithen*, 481 F.3d at 97 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)). In *McCormick*, we characterized the Second Circuit's test as "a similar inquiry" to that of "the source of the injury" test we adopted in *McCormick*. *See McCormick*, 451 F.3d at 393-94 (borrowing the "source of the injury" test from a Fourth Circuit decision, *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712 (4th Cir. 2006)).

[3]Indeed, we think the conclusion reached in *McKithen* is inconsistent with the Second Circuit's decision in *Hoblock*, 422 F.3d at 87-88. *Hoblock* illustrated the difference between a barred claim and a valid claim under *Rooker-Feldman* with two examples. The barred claim involved a

### III. Conclusion

For the foregoing reasons, this appeal is **DISMISSED without prejudice** to Smith returning to the state court to revisit the issue post-*Osborne*.

---

state-court decision, based purely on state law, that terminated a father's parental rights and ordered the state to take custody of his son. If the father sued in federal court for return of his son on the grounds that the state judgment violated his federal substantive due process rights, his complaint was of an injury caused by the state-court judgment. The valid claim involved a plaintiff who sued his employer in state court for violating both state anti-discrimination and Title VII laws and lost. If that plaintiff sued in federal court bringing the same suit, he would not be alleging injury from the state judgment, because the alleged injury was based on the employer's discrimination. In our view, the injury in *McKithen* and the case *sub judice* resembles the former example and not the latter.

**SUTTON, Circuit Judge**, concurring in part and dissenting in part. I agree with one aspect of the majority's decision (its rejection of the merits of this appeal) but not the other (its conclusion that the *Rooker-Feldman* doctrine strips the federal courts of jurisdiction to hear the case).

In eighty-six years, the Supreme Court has enforced the *Rooker-Feldman* limit on the jurisdiction of the federal courts just twice. *See Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The Court's most recent applications of the doctrine suggest that may be it—that, if the party's name is not Rooker or Feldman, or if the case does not present a virtually identical challenge, it is unlikely that the doctrine strips the federal courts of jurisdiction to hear the claim. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) ("Since *Feldman*, this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction."); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006); *id.* at 468 (Stevens, J., dissenting on non-*Rooker-Feldman* grounds) (stating *Exxon-Mobil* "finally interred the so-called '*Rooker-Feldman* doctrine'").

The idea behind *Rooker-Feldman* is that 28 U.S.C. § 1257, the statute that gives the United States Supreme Court authority to review final decisions of the state courts, by implication denies federal district courts jurisdiction—and federal courts of appeals jurisdiction—over challenges to state-court judgments. *See Exxon*, 544 U.S. at 283. If a party wishes to challenge a state-court judgment, it must seek review in the U.S. Supreme Court, not in the federal district courts. *Id.* In *Exxon Mobil*, the Court confined the *Rooker-Feldman* doctrine to a "narrow ground," namely "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those claims." *Id.* at 284. Smith's claims do not occupy this "narrow ground."

-10-

Invoking substantive and procedural due process, Smith complains that Michigan has denied him access to DNA evidence, which implicates his "liberty interest in demonstrating his innocence with new evidence under state law," *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, __ U.S. __, 129 S. Ct. 2308, 2319 (2009). Smith's substantive due process challenge does not satisfy *Rooker-Feldman*'s requirements. He asserts a constitutional right to re-test evidence from his trial, using then-unavailable DNA testing techniques—a right the State of Michigan refuses to grant him. The state-court judgment, however, did not create or cause this injury; the State of Michigan (through its prosecutors) did. The state court "simply ratified, acquiesced in, or left unpunished" the State's refusal to allow him access to new DNA testing. *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) (internal quotation marks omitted). *Rooker-Feldman* does not cover this substantive due process claim, and that by itself shows that the district court (and we) have jurisdiction over this case.

Smith's procedural due process challenge also exceeds *Rooker-Feldman*'s limited grasp. Fairly construed, Smith's *pro se* papers present an as-applied challenge to the adequacy of Michigan's procedures for obtaining post-conviction access to DNA and to the actions of the Wayne County Prosecutor's Office in applying those procedures, not a challenge to the state-court judgment itself. *See* R.1 ¶¶ 42, 44–45. *Osborne* explicitly contemplated this type of challenge in DNA-access cases, *see Osborne*, 129 S. Ct. at 2322, and I doubt the Court invited what *Rooker-Feldman* prevents.

While I cannot embrace the majority's jurisdictional rulings, I agree with much of its alternative ruling on the merits. Under *Osborne*, Smith has no substantive due process right to access evidence from his criminal trial and subject it to DNA testing. *See id.* And his procedural due process claim fares no better because Michigan provides a more comprehensive procedure for

-11-

accessing evidence for DNA testing than the Alaska scheme upheld in *Osborne*. *See id.* at 2320–22; *see also* Mich. Comp. Laws § 770.16. It is not true, however, that sovereign, prosecutorial or judicial immunity "likely" immunizes the defendants from the forward-looking injunctive relief Smith seeks even if he had a meritorious claim. Maj. Op. at 7; *see also* R.1 at 11. These doctrines shield officials from damages suits, not forward-looking injunctions. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (judicial immunity); *Sup. Ct. of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 737 (1980) (prosecutorial immunity); *Ex parte Young*, 209 U.S. 123, 159–60 (1908) (sovereign immunity).