RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MAUREEN VAN HOVEN, for herself and class members,

*Plaintiff-Appellee*,

*v.*

BUCKLES & BUCKLES, P.L.C.; GERALDINE C. BUCKLES; MICHAEL H.R. BUCKLES,

*Defendants-Appellants*.

Nos. 18-2399/19-1078

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:14-cv-00060—Robert J. Jonker, District Judge.

Argued: October 23, 2019

Decided and Filed: January 16, 2020

Before: SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Roger L. Premo, Farmington Hills, Michigan, for Appellants. Michael O. Nelson, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Roger L. Premo, Farmington Hills, Michigan, for Appellants. Michael O. Nelson, Grand Rapids, Michigan, Kevin J. Rogers, Phillip C. Rogers, Grand Rapids, Michigan, for Appellee. Jeffrey A. Topor, SIMMONDS & NARITA LLP, San Francisco, California, for Amicus Curiae in 18-2399.

SUTTON, J., delivered the opinion of the court in which KETHLEDGE, J., joined. STRANCH, J. (pp. 16–22) delivered a separate dissenting opinion.

---

**OPINION**

---

SUTTON, Circuit Judge.  A lawyer sued two lawyers, and each side hired more lawyers. Five years later, after "Stalingrad litigation" tactics, discovery sanctions, and dueling allegations of professional misconduct, we are left with $3,662 in damages and roughly $180,000 in attorney's fees.  We vacate and remand.

I.

Maureen Van Hoven, a Michigan attorney, defaulted on a credit card debt with Discover several years ago.  Discover hired Buckles & Buckles, a law firm, to collect the debt.  The law firm filed a debt collection lawsuit in state court and won.  Van Hoven didn't pay.

Faced with a recalcitrant debtor, a creditor may use garnishment to intercept the debtor's income at its source (say from the debtor's employer) rather than trying to collect from the debtor herself.  Post-judgment garnishment usually comes easily because the debtor already had her day in court and lost.  That's true in Michigan, where the Michigan Court Rules offer a simplified post-judgment garnishment procedure.  To collect, the creditor gives the court clerk a verified statement that describes the debt and the parties.  MCR 3.101(D).  If everything "appears to be correct," the clerk issues a writ of garnishment and the creditor serves it on the third party, the garnishee.  MCR 3.101(D)–(E).  Unless the garnishee or debtor objects, that's usually it:  The garnishee gives the money to the creditor rather than the debtor.  MCR 3.101(J)(1).

Buckles & Buckles invoked the procedure to collect this debt, filing four requests for a writ of garnishment over the course of a year.  Van Hoven says those requests violated the Michigan Court Rules in two ways.  In each request, Buckles tacked on the costs of the request (a $15 filing fee) to the amount due.  And in later garnishment requests, Buckles added the costs of prior failed garnishments, those that didn't result in any money changing hands.

Van Hoven didn't object to the law firm's garnishment requests in Michigan state court, as the Rules permit.  MCR 3.101(K).  She instead filed a class action lawsuit in federal court

under the Fair Debt Collection Practices Act, which prohibits debt collectors from making false statements in their dunning demands.  15 U.S.C. § 1692e.

More twists and turns later, Van Hoven won her class action.  The court found that Buckles & Buckles owed 168 class members $3,662 in damages—$22 per person on average.  Her attorneys sought $186,680 in attorney's fees, and the court granted their request in full.

Buckles & Buckles appealed the merits ruling and the attorney's fee award.

II.

Buckles & Buckles challenges the district court's jurisdiction to hear the case under the *Rooker-Feldman* doctrine.  *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Section 1257 of Title 28 gives the United States Supreme Court exclusive jurisdiction to review appeals from state court decisions.  By implication, § 1257 prohibits lower federal courts from hearing appeals from state court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 291–92 (2005).  The *Rooker-Feldman* doctrine, one might say, thus bars federal lawsuits that amount to covert appeals of state court judgments.

The limitation, says the Court, applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  That is a "narrow" situation, *id.*, so narrow the Supreme Court has applied the doctrine just twice in nearly a century, making it applicable so far just to people named Rooker or Feldman.  *See Skinner v. Switzer*, 562 U.S. 521, 531 (2011).  The Court repeatedly has chastised lower federal courts for extending the doctrine "far beyond" its proper scope.  *Id.* at 532 (quotation omitted).

*In re Smith* illustrates the point.  349 F. App'x 12 (6th Cir. 2009).  A state inmate filed a petition in state court against state officials, seeking DNA testing of the evidence underlying his conviction.  *Id.* at 13.  After the state court denied his petition, he filed a federal lawsuit alleging that he had a federal constitutional right to exonerating evidence and that the state officials had deprived him of that right.  *Id.* at 15–16.  *Rooker-Feldman* does not apply in those circumstances, we held, because the plaintiff's injury was caused by state officials, not the state court judgment

denying his petition.  *See Skinner*, 562 U.S. at 529, 532 (citing *Smith*, 349 F. App'x at 18 (Sutton, J., concurring in part and dissenting in part)).  The state court merely "ratified, acquiesced in, or left unpunished" the actions of those state officials.  *Smith*, 349 F. App'x at 18 (quotation omitted).  Those actions, not the state court judgment, caused the plaintiff's injuries.

Today's case is not the rare one that threads the *Rooker-Feldman* needle.  That's true, first of all, because the rule applies only when a state court renders a *judgment*—when the court "investigate[s], declare[s], and enforce[s] liabilities" based on application of law to fact. *Feldman*, 460 U.S. at 479 (quotation omitted).  A writ of garnishment does not fit that description.  A creditor may obtain one simply by filing a form with the court clerk, who then issues the writ as long as the request "appears to be correct."  MCR 3.101(D).  The writ that comes out of this ministerial process is not a state court judgment any more than a summons or complaint is a state court judgment.  *Cf.* MCR 3.101(M)(2).  *Rooker-Feldman* does not apply to "ministerial" actions by court clerks.  *Feldman*, 460 U.S. at 479–80; *see, e.g.*, *Snyder v. Nolen*, 380 F.3d 279, 289 n.10 (7th Cir. 2004).

Van Hoven's injuries also did not arise from the writs of garnishment by themselves. They arose from costs included in them, which (she says) violated the Fair Debt Collection Practices Act.  Her lawsuit targets Buckles & Buckles' actions in tallying the amount of relief requested, not the writs of garnishment themselves.  *See Alexander v. Rosen*, 804 F.3d 1203, 1206–07 (6th Cir. 2015).  Once before, we declined to apply *Rooker-Feldman* in similar circumstances:  a lawsuit under the Act alleging that a creditor made a false statement to obtain a garnishment order in state court.  *Todd v. Weltman, Weinberg & Reis Co., LPA*, 434 F.3d 432, 435–37 (6th Cir. 2006).  In rejecting the *Rooker-Feldman* defense, we explained that the plaintiff's injuries were caused by the defendant, not the state court judgment.  *Id.* at 437.  The plaintiff had "filed an independent federal claim that [he] was injured by [the defendant] when [the defendant] filed a false affidavit."  *Id.*  The same is true here.

Buckles & Buckles pushes back, invoking *Harold v. Steel*, 773 F.3d 884, 885–86 (7th Cir. 2014).  But the case distinguishes itself.  A claimant alleged that a debt collector had made a false statement in litigation to obtain a default judgment against him.  *Id.* at 885.  The plaintiff's injury was caused by the state court judgment, not the defendant's actions.  That's because the

plaintiff had already raised the same objections in state court and lost. *Id.* The resulting state court judgment prompted the plaintiff's wages to be garnished. That made the plaintiff a "state-court loser[]" complaining of an injury "caused by [a] state-court judgment[]" against him, seeking "review and rejection" of a factual determination the state court had already made. *Exxon*, 544 U.S. at 284. By contrast, Van Hoven never raised her concerns in Michigan state court. Right or wrong, *Harold* does not apply.

We have jurisdiction and must address the merits.

### III.

Van Hoven claims that Buckles & Buckles made two types of "false, deceptive, or misleading representation[s]" under the Act when they presented their garnishment requests to the state court clerk: (1) they sought the costs of each garnishment request under Michigan law, and (2) they sought the costs of prior failed garnishments under Michigan law. 15 U.S.C. § 1692e. Quite a few questions lurk. Did Michigan law permit the included costs? If not or if it is not clear, does every misstatement of state law violate the Act? What line potentially separates covered from uncovered inaccurate statements about state law? Does it make a difference that the statements sought relief from the court clerk and were served on the debtor only to give it a chance to object (which it did not do)?

### A.

Some common ground narrows things a bit. There is no exemption for lawyers. The Act applies to lawyers engaged in debt collection. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The Act also applies to the content of documents filed in litigation. *Marquez v. Weinstein*, 836 F.3d 808, 810–11 (7th Cir. 2016) (collecting cases). And the Act at a minimum covers some misstatements about state law. *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536–37 (6th Cir. 2014). A law firm could not write a dunning letter saying that state law allows it to seize the debtor's house within thirty days if the debt is not paid when state law says no such thing.

At the same time that the Act covers some misstatements about state law by lawyers, "Congress did not turn every violation of state law into a violation of the FDCPA." *Id.* at 537;

*see also Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 127 (2d Cir. 2016) (collecting cases). But if not always, if not never, when does a misstatement about state law count as a "false, deceptive, or misleading representation" under § 1692e?  When, more specifically, does an inaccurate statement about state law count as a "false . . . representation"?  While there assuredly is some overlap in coverage of the three operative terms, we think (and the plaintiffs in their briefing seem to agree) that their best case turns on the allegation that the garnishment requests amount to false representations about state law.

A few other limitations prevent every violation of state law from being transformed into a violation of the Act.  One is that a claim must turn on a *material* misstatement.  The Act does not make actionable every false representation.  The statement must be material, which is to say capable of influencing the consumer's decision-making process.  *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596–97 (6th Cir. 2009).  The background presumption of materiality for federal claims based on false statements offers ample support for this limitation.  *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009).  Every circuit to consider the question, including ours, has construed the statute to contain a materiality requirement.  *Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018) (collecting cases); *Miller*, 561 F.3d at 596–97.  A debt collector who promises to send dunning letters in one font but uses another, for example, may make a false statement.  But it is not one covered by the Act.  *See Hahn*, 557 F.3d at 757; *see also Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013) ("recogniz[ing]" that attorneys had violated state rules by forging signatures on pleadings but concluding that the fact "has no bearing on whether a signature is material under federal law").

That the Act applies only to material misstatements, however, does not help us today. Van Hoven submits that Buckles & Buckles claimed a right to the $15 filing fee for each garnishment and eventually for the cumulative total of the costs of prior failed garnishments. While those amounts may seem de minimis for some consumers, that is not true of all consumers.  They are material statements.  *See Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 368 (7th Cir. 2018).

The other limitation bears on this case and grows out of the imperative that the statement be a "false . . . representation" at the time the creditor makes it.  We know, to start, that the

provision extends beyond false statements of fact about, say, the total amount of a set of debts to false statements about state law. Look at neighboring provisions for proof. One spells out the Act's application to a "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), a prohibition that plainly covers legal misrepresentations, such as the "legal status of any debt." *See id.* § 1692e(8), (10). The bona fide error defense also suggests that the Act applies to legal misrepresentations. It provides a safe harbor for debt collectors who obtain guidance from the Federal Trade Commission to permit one type of debt collection letter over another—whether the guidance relates to descriptions of fact or law. Confirming this last point, *Jerman* held that a debt collector could obtain guidance from the Commission over the meaning of the Act itself—surely a matter of legal interpretation. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 588 (2010) ("Congress evidently contemplated" that the FTC, now the Consumer Financial Protection Bureau, would have a "role" in "resolving ambiguities under the Act") (citing 15 U.S.C. § 1692k(e)).

Even though the Act covers "false" material statements about state law, that does not mean it extends to every representation about the meaning of state law later disproved. "[L]egal reasoning is not a mechanical or strictly linear process," suggesting it often doesn't yield absolute true or false answers at the time of the representation. *Jerman*, 559 U.S. at 587. In dealing with open questions of state law, excellent arguments sometimes will appear on either side. And we generally don't think of a position on the meaning of state law as false at the time it was issued whenever a higher court over time takes a different position in a later case. That's what we take the Supreme Court to mean when it said that "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Heintz*, 514 U.S. at 295–96 (quoting 15 U.S.C. § 1692e(5)). A representation of law is not actionably false every time it turns out wrong.

To illustrate: Imagine the lawyer's representation, whether in a debt collection letter or a legal brief, acknowledged that state law was unclear about whether the creditor could obtain a certain cost. Then it explained that its best reading of the law allowed the cost and sought it. How would that be a false representation? Each statement was true. The law was unclear, and the creditor's best reading was that it was permissible.

By contrast, misquoting a case, relying on a statute no longer in existence, or invoking an overruled decision all deserve the moniker "false," and sometimes "deceptive" and "misleading" to boot. *See* Restatement (Third) of the Law Governing Lawyers § 111 & cmt. b (2010) (referring to these as examples of a "false statement of law"). Other examples come to mind. It would be false to claim that a one-year statute of limitations runs for two years, or to say today that the Act does not apply to attorneys collecting debts. *See Heintz*, 514 U.S. at 292. In all of these settings, the representations would be false when made, and it does not matter whether the lawyer knows they are false. Ignorance of the law is not a defense. *See Jerman*, 559 U.S. at 581–82.

We doubt that the safe harbor for obtaining approval from the agency has any meaningful role to play here. Sure, the Act permits a debt collector to obtain guidance from the Federal Trade Commission, authority since transferred to the Consumer Financial Protection Bureau, over the meaning of the Act itself and perhaps over whether a fact statement counts as false. *Jerman*, 559 U.S. at 588. But that does not give the *federal* agency authority to resolve the meaning of ambiguous provisions of *state* law.

More helpful is the analogy to sanctions based on attorneys' statements in litigation. Rule 11 authorizes sanctions when attorneys advance "legal contentions" that are not "warranted by existing law." Fed. R. Civ. P. 11(b). Just because a court ultimately disagrees with the attorney's argument doesn't mean it was "[un]warranted by existing law" at the time it was made. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528–29 (5th Cir. 2016); *see also* 5A Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 1334 (4th ed. 2019). The question instead is whether the legal contention was objectively baseless at the time it was made, making it "legally indefensible," *SnoWizard*, 833 F.3d at 529, or "groundless in law," *Brubaker v. City of Richmond*, 943 F.2d 1363, 1385 (4th Cir. 1991).

We have borrowed from Rule 11 before when considering assertions of *fact* made in litigation under the Act. It's not a violation of the Act to file a collection lawsuit without presently possessing means to prove a debt exists, we held, because Rule 11 requires only that factual contentions "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th

Cir. 2006) (citing Fed. R. Civ. P. 11(b)(3)); *see Lee v. Javitch, Block & Rathbone LLP*, 601 F.3d 654, 658 (6th Cir. 2010) (overturning jury verdict that an attorney's factual assertion in a garnishment action violated the Act, because the attorney had conducted a reasonable investigation at the time the assertion was made).

The same logic applies to representations of law. Just as a lawyer does not "misrepresent" the facts by making a factual contention later proved wrong, a lawyer does not "misrepresent" the law by advancing a reasonable legal position later proved wrong. That logic applies with even more force to representations of law given the frequent before-the-case difficulty, sometimes indeterminacy, of legal questions. *Harvey* implied as much when it explained that suing on a time-barred debt would qualify as a "misleading representation" under § 1692e because filing such a lawsuit would be sanctionable. 453 F.3d at 332–33. To like effect, *Javitch*'s holding that the attorney had conducted a "reasonable investigation" into the facts rested on the "uncertain legality" of a subpoena under state law. 601 F.3d at 658–59.

Other circuits have suggested a similar line. Legal contentions must be objectively baseless, not just later proved wrong, to be actionable under the Act. *See, e.g.*, *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) ("[I]t was not false or misleading to submit a client affidavit and legal memorandum arguing [defendant's] legal position" even though "a state court judge rejected the contention."); *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297–1300 (11th Cir. 2015) ("It would be passing odd to find that allegations that a state court filing asserted a legal position contrary to that of the consumer were sufficient to state a claim under § 1692e."); *see also Hill*, 888 F.3d at 346–47 (rejecting liability under § 1692f for seeking improper interest on a debt, because the proper amount of interest "ha[d] not been decided by the [state] supreme court" and the text of the state statute "did not prohibit" defendant's request). On the other side of the line, suing on a time-barred debt is objectively baseless, and unsurprisingly subject to liability in many circuits. *See Philips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (collecting cases). So is filing a writ of garnishment against a debtor current on his payments. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994); *cf. BE & K Const. Co. v. NLRB*, 536 U.S. 516, 532–33 (2002) ("For even if a suit could be seen as a kind of provable statement, the fact that it loses does not

mean it is false."); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech . . . baseless litigation is not immunized by the First Amendment right to petition.").

B.

This case captures the two sides to the rule.  Buckles & Buckles fairly asked the state court clerk for permission to include one type of cost in the garnishment and unfairly sought to include the other.

*Current Garnishment Costs.*  When this lawsuit began, the Michigan Rules permitted creditors to include "the total amount of the postjudgment costs accrued to date" in their garnishment requests.  MCR 3.101(D)(2) (2014).  The debate is this:  Do the "costs accrued to date" include the filing fee and other costs associated with that request?  Or may creditors seek those costs only after the garnishment?

The answer turns on Michigan law, more tellingly on what we think the Michigan Supreme Court would do based on "all the available data."  *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).  No false representation occurred when Buckles & Buckles asked the court clerk to include this cost for two reasons:  It was a reasonable request under Michigan law at the time, and it reflected the better reading of Michigan law at the time at any rate.

The Rule by its words appeared to support a creditor's request for the costs of each garnishment.  The Rule permitted creditors to seek the "total" amount of "the postjudgment costs," suggesting that the drafters of the Rule—the Michigan Supreme Court—meant to permit the costs of each request.  The filing fee for each garnishment is a cost, all can agree.  And it's hard to call something a "total" set of costs that excludes some of them.  The phrase "costs accrued to date" points in the same direction.  The filing fee of each request occurs on the date of the garnishment request and thus counts as a cost "accrued to date"—the date of the request.

These terms put in context a neighboring provision.  The Rules provide that the "[c]osts in garnishment proceedings are allowed as in civil actions."  MCR 2.625(E) (2014).  In run of the

mine civil actions, it is true, parties may not seek costs until *after* they have won.   MCR 2.625(A)–(B).   But the provisions above suggest that this general guideline applies only to contested garnishments, just it applies only to contested civil actions.  *Haliw v. City of Sterling Heights*, 691 N.W.2d 753, 756 (Mich. 2005) (specific controls the general); *see* MCR 1.103 ("Rules stated to be applicable only in a specific court or only to a specific type of proceeding . . . control over general rules.").   When Van Hoven was served with this garnishment request, she chose not to contest it in state court, even though the rules gave her that authority.

One other clue supports this interpretation.   The Michigan Supreme Court recently amended the garnishment rules to clarify that creditors may include current costs in their garnishment requests.  Amendments of Rules 2.625 and 3.101 of the Michigan Court Rules, ADM File No. 2016-40, Sept. 27, 2017.  The new MCR 3.101(D) does not change the operative language discussed above.  It simply clarifies it with an example.  As amended, and as  italicized, it permits recovery of "the total amount of the postjudgment costs accrued to date, *which may include the costs associated with filing the current writ of garnishment*."  MCR 3.101(D).

Also amended was the provision that mentions the analogy to costs in civil cases.  It covers only garnishment proceedings when the garnishee disputes liability—when the garnishment proceeding turns into a full-blown case rather than a quick formality.   MCR 2.625(E) ("Costs in garnishment proceedings *to resolve the dispute between a plaintiff and a garnishee regarding the garnishee's liability* are allowed as in civil actions." (emphasis added to amendment)).

These amendments eliminate a lot of guesswork.  It's almost as if the district court certified the question, and the Michigan Supreme Court answered it—which of course was another path open here (and indeed sought by Buckles & Buckles but rejected by the court).  "It is well settled by [the Michigan Supreme] Court that when an amendment is enacted soon after controversies arise regarding the meaning of the original act, it is logical to regard the amendment as a legislative interpretation of the original act."  *City of Detroit v. Walker*, 520 N.W.2d 135, 142 (Mich. 1994) (quotation omitted).  That description fits what happened to a tee. The amendments added an example that clarified a broad term in the original version of the text.

Confirming this conclusion is another data point.  The amendments contain a "Staff Comment" explaining that the relevant changes "clarify the authority and process for recovering postjudgment costs."  *Amendments* at 7.  Staff comments, true enough, are not binding and do not reflect a substantive determination by the Michigan Supreme Court itself.  *Id.*  But at the same time, the Michigan Supreme Court treats staff commentary as "persuasive in understanding the proper scope or interpretation of a rule or its terms."  *See People v. Comer*, 901 N.W.2d 553, 563 n.48 (Mich. 2017).

One other data point suggests we should not hold Buckles & Buckles liable for this cost.  A proposed rule by the Consumer Financial Protection Bureau prohibits lawsuits on time-barred debts, but only when "the debt collector knows or should know [the debt] is [] time-barred."  *See* Debt Collection Practices (Regulation F), 84 Fed. Reg. 23,274, 23,403 (proposed May 21, 2019) (to be codified at 12 C.F.R. pt. 1006).  The Bureau chose this standard over "strict liability" because "determining whether the statute of limitations has expired can be complex" and "a debt collector may be genuinely uncertain even after undertaking a reasonable investigation . . . for example, when the case law in a State is unclear."  *Id.* at 23,329.  On the other hand, sometimes "a debt collector will know, or can readily determine, whether the statute of limitations has expired," and it's appropriate to hold them liable in those circumstances.  *Id.*  Though the proposed rule is not the Bureau's "final [] interpretation[]," *id.* at 23,274 n.6, it remains a source of persuasive authority.  *See Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 212–13 (1981).

Van Hoven's contrary arguments do not carry the day.  The amendments' delayed effective date, for example, does not change things.  Yes, the amendments were approved in September 2017 and became effective in May 2018.  But the Court gave no indication that this delay was due to a substantive change in permissible garnishment costs.  Other changes to the garnishment rules may explain the delayed effective date.  The amendments set forth a new, elaborate procedure for debtors to challenge the amount of costs assessed against them.  *Amendments* at 1–2.  It's likely (perhaps most likely) that the delay gave parties time to adjust to these new procedures.  The delayed effective date, more to the point, may show that the Amendments fall short of *controlling* today's decision, but they still confirm the objective reasonableness of the law firm's interpretation at the time.

Nor does the "bona fide error" defense make a difference to our conclusion about current garnishment costs.  That defense protects debt collectors from liability if they can show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  The Supreme Court recently concluded that the defense did not extend to mistaken interpretations of the Act and declined to decide whether it covered mistaken interpretations of state law.  *Jerman*, 559 U.S. at 576–77, 581 n.4.  The key question today is not whether the bona fide error defense applies to interpretations of state law; it is whether this is a cognizable "false representation" at all.

Many of the cases supporting our interpretation of cognizable "false representations," it is true, arise in the context of lawyer statements in legal briefs, as opposed to lawyer statements in debt collection letters.  But we see no reason in the text of the Act to have two sets of standards for threshold claims of liability, one based on legal filings, the other based on letters to debtors.  But even if the statute drew such a line, it would not aid Van Hoven.  Remember how this case arose.  It started with a request by Buckles & Buckles to the state court clerk to include a certain cost in its garnishment order.  Any legal representation thus went directly to the court clerk.  It was a legal pleading in other words.  And the pleading was served on Van Hoven not to seek money from her but to give notice that she could challenge the garnishment in state court.  The document, in short, was a legal pleading with relevance to Van Hoven only to the extent she joined the legal issue in further state court litigation.

All in all, when Buckles & Buckles asked for all total costs, including those of any garnishment request to date, it did not make a "false, deceptive, or misleading representation" and therefore did not violate the Act.  15 U.S.C. § 1692e.  It was a reasonable request at the time—and thus not false at the time—and by our lights reflected the best interpretation of the Rules anyway.

*Failed Garnishment Costs.*  The decision of Buckles & Buckles to include the cost of prior failed garnishments is another matter.  In these instances, the law firm included the costs of garnishments that failed because the garnishee did not owe the debtor any money, did not hold any property subject to garnishment, or was not the debtor's employer.  MCR 3.101(R)(2)

(2014).  At the time of this lawsuit, the Rules made clear that creditors were "not entitled to recover the costs of [the] garnishment" when that happened.  *Id.*; *Amendments* at 6.  That makes including them a false representation under the Act.

But the Act does not punish *every* factual and legal misrepresentation, only culpable ones.  Debt collectors are protected from liability if they can show that their "violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  Buckles & Buckles claims to have just such a procedure for potential factual misrepresentations.  The law firm by the way does not argue that this defense applies to these legal misrepresentations.  For good reason:  It's difficult to see how they could be "bona fide" mistakes.  Instead, it argues that it included many prior failed garnishment costs by mistake.  By mistakes of fact, that is:  In other words, it tried and failed to prevent the costs of prior failed garnishments from being included.

Buckles & Buckles, moreover, does not merely assert it has such a procedure. It submitted an affidavit from Michael Buckles substantiating the procedure's existence and explaining how it works.  The law firm avoids failed garnishments by carefully picking its targets and seeking garnishment only if it "knows or has good reason to believe" the third party is an appropriate garnishee.  R. 60-1 at 3.  When garnishments nonetheless fail, it has "written procedures in place to record, track, and, if and as appropriate, back out postjudgment garnishment costs that are not recoverable"—procedures "designed to prevent" seeking costs of failed garnishments.  *Id.* Those general contours are fleshed out by a description of the specific actions it took in Van Hoven's case to avoid charging her for failed garnishment costs.  When a garnishment request against Van Hoven's old bank failed, a firm employee "printed a copy of the [bank's] disclosure" showing the failure.  *Id.* at 5.  The employee then "delivered [it] to another Firm employee" who was responsible for updating Buckles & Buckles' records to subtract the filing fee associated with the failed garnishment.  *Id.*  Unfortunately, the employee hadn't yet updated the records two days later, so Buckles & Buckles accidentally included the $15 filing fee in one more garnishment request.  No one disputes the existence of this procedure.

But Buckles & Buckles never had a chance to prove that its procedure sufficed given the way the case proceeded below.  It deserves that chance.  We thus remand the case to allow the

district court to determine whether Buckles & Buckles made "bona fide" mistakes of fact in including certain costs of prior failed garnishments and whether its procedure for preventing such mistakes suffices. To the extent the record needs development on this issue, the parties are free to seek additional discovery.

One last point. If Buckles & Buckles still faces some liability on remand, the district court may wish to revisit its method for making the damages calculation. The award relied on a spreadsheet from Buckles & Buckles, which shows each class member's judgment balance, postjudgment costs properly subtracted from the debtor's balance, and postjudgment costs improperly left on the debtor's balance. Only the last category—column three—represents an unlawful cost assessment. Even that unlawful cost assessment, however, may not reflect actual damages. That's because class members, it would seem, suffered damages only to the extent they paid Buckles & Buckles more than it was legally entitled to get: that is, if they paid everything they lawfully owed *and* unlawfully assessed costs. The existing damages calculation does not seem to account for that possibility.

\* \* \*

With the case trimmed down, the class may need to be trimmed down or decertified. Because the merits remain an open question, it's likewise an open question whether the plaintiffs are entitled to damages and whether their attorneys are entitled to fees. We leave these matters to the district court in the first instance. We reverse the district court's orders on the merits, vacate the orders on class certification, damages, and attorney's fees, and remand for proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

JANE B. STRANCH, Circuit Judge, dissenting.    The majority opinion concludes that Buckles & Buckles did not violate the FDCPA when it taxed consumers with court costs before those costs came due under Michigan Court Rules.    It arrives at this conclusion, however, by asking the wrong question—whether the practice of Buckles & Buckles was reasonable, rather than whether it was lawful.    The district court appropriately framed the question and correctly answered it under our published precedent.    I would affirm its judgment holding Buckles & Buckles liable for making misleading representations in violation of the FDCPA.

As the majority acknowledges, "ignorance of the law is not a defense" under the FDCPA. Instead, this "extraordinarily broad" remedial statute, *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992), bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e.    It does so by imposing strict liability, meaning that a debt collector may be liable even if a plaintiff does not prove knowledge or intent or show actual damages.    *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015).    Our precedent explains that this approach "places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Stratton v. Portfolio Recovery Assocs., LLC,* 770 F.3d 443, 449 (6th Cir. 2014).    "In other words, if a debt collector seeks fees to which it is not entitled, it has committed a prima facie violation of the Act, even if there was no clear prior judicial statement that it was not entitled to collect the fees." *Wise*, 780 F.3d at 713.

That is the situation here.    Although no court had previously ruled Buckles & Buckles' conduct impermissible, the plain language of relevant Michigan Court Rules reveals that the debt collector's practice of frontloading postjudgment writs-of-garnishment costs onto consumers' unsatisfied judgments before it knew whether those costs could be passed along was "not entirely lawful." *Stratton*, 770 F.3d at 449.

Michigan Court Rule 2.625(E) provided that costs in garnishment action were "allowed as in civil actions." MCR 2.625(E) (2014).**1**  In civil actions, costs are "allowed to the prevailing party."  MCR 2.625(A).  At the times relevant to Van Hoven's claims, "[i]f the garnishee [was] not indebted to the defendant, [did] not hold any property subject to garnishment, and [was] not the defendant's employer," then "the plaintiff [was] not entitled to recover the costs of that garnishment."  MCR. 3.101(R)(2).  The garnishment plaintiff in those circumstances had not achieved prevailing party status and could not recover the costs associated with the unsuccessful garnishment.  Procedurally, the clerk of the court reviewed requests for writs of garnishment and issued writs for requests that appeared to be correct and that included a verified statement from the judgment-creditor plaintiff.  M.C.R. 3.101(D).  The statement was required to include, "the amount of the judgment; the total amount of the postjudgment interest accrued to date; the total amount of the postjudgment costs accrued to date; the total amount of the postjudgment payments made to date, and the amount of the unsatisfied judgment now due (including interest and costs)."  M.C.R. 3.101(D)(2).

Given the instruction that "[c]osts in garnishment proceedings are allowed as in civil actions," when "prevailing party" status is achieved, MCR 2.625(A)–(E), taxing the costs of pending garnishments prior to obtaining prevailing party status was prohibited by the Michigan Court Rules in effect at the relevant time.  Buckles & Buckles' practice of representing to the clerk of the court that "the total amount of postjudgment costs accrued to date" included costs not yet due and payable and of tacking those costs onto "the amount of unsatisfied judgment now due" was therefore misleading.

The majority opinion reads the rules for garnishment proceedings as divorced from the general rules for civil actions.  It is true that in the event of a conflict between rules, a specific rule controls over a more general rule.  *Haliw v. City of Sterling Hts.,* 471 Mich. 700, 706 (2005).  Here, however, no conflict exists between the specific rules governing garnishments, MCR 3.101, and the general rules governing costs in civil proceedings, MCR 2.625.  To the contrary,

---

**1**Unless otherwise noted, citations to the Michigan Court Rules refer to the rules as they were in effect in 2014.

the general rules instruct that the costs in garnishment proceedings are allowed as in civil actions. MCR 2.625(E).

In drawing conclusions about the reasonableness of this frontloading practice, the majority opinion also relies significantly on prospective amendments to the Michigan garnishment rules adopted in the midst of this litigation. It characterizes the amendments as mere clarifications and imagines them to be the Michigan Supreme Court's answer to a question that was never certified. If these extensive amendments offer any clues about the meaning of the prior rules, it is that the wholesale changes were required to make Buckles & Buckles' frontloading practice permissible moving forward.

First, it is well established under Michigan law that a change in language presumably indicates a change in meaning. *See e.g.*, *People v. Pinkney*, 501 Mich. 259, 282 n.55 (2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256 (2012) for the proposition that "a change in the language of a prior statute presumably connotes a change in meaning."); *People v. Arnold*, 502 Mich. 438, 479 (2018) (same); *D'Agostini Land Co. LLC v. Dep't of Treasury*, 322 Mich. App. 545, 559 (2018) ("Courts have long understood that 'a change in the language of a prior statute presumably connotes a change in meaning.'" (quoting Scalia & Garner, *Reading Law* 256 (2012)); *Ray v. Swager*, 501 Mich. 52, 80 n.68 (2017) (same); *Bush v. Shabahang*, 484 Mich. 156, 167 (2009) (explaining presumption that legislature intends to make some change in existing law when it adopts an amendment); *Lawrence Baking Co. v. Michigan Unemployment Comp. Comm'n*, 308 Mich. 198, 205 (1944) (same).

The staff commentary attached to the changes explains that the amendments were "submitted by the Michigan Creditor's Bar Association," are "not an authoritative construction by the Court," and that their adoption "in no way reflects a substantive determination by" the Michigan Supreme Court. Amendments of Rules 2.625 and 3.101 of the Michigan Court Rules, ADM File No. 2016-40, Sept. 27, 2017. The Governmental Affairs Director for the Michigan Creditor's Bar Association at the time the organization drafted and submitted the rule changes was Appellant Michael Buckles. Michael Buckles, "*MSC Clarifies Rule for Recovery of Post*

*Judgment Court Costs and Procedures for Garnishment Proceedings*," Detroit Legal News (October 4, 2017), http://legalnews.com/detroit/1448852.

The Michigan Creditor's Bar Association submitted amendments to numerous provisions of the Rules that directly address the claims raised in this litigation and conform the Rules to the positions taken by Buckles & Buckles.  The amended MCR 3.101(D)(2) now reads:

> (2) the amount of the judgment; the total amount of the postjudgment interest accrued to date; the total amount of the postjudgment costs accrued to date, which may include the costs associated with filing the current writ of garnishment; the total amount of the postjudgment payments made to date, and the amount of the unsatisfied judgment now due (including interest and costs), which may include the costs associated with filing the current writ of garnishment.

MCR. 3.101(D)(2) (emphasis added to highlight new language).  Language in MCR 2.625 was amended as follows:

> Costs in garnishment proceedings to resolve the dispute between a plaintiff and a garnishee regarding the garnishee's liability are allowed as in civil actions.

MCR. 2.625(E) (emphasis added to highlight new language).  A new section on the "Procedure for Taxing Costs and Fees After Judgment" was also added.  MCR 2.625(K).  It states, in part, "[a]ny error in adding costs or fees to the judgment balance by the judgment creditor or its attorney is not actionable unless there is an affirmative finding by the court that the costs and fees were added in bad faith."  M.C.R. 2.625(K)(2)(d).

The language relevant to determining whether a garnishment plaintiff achieves prevailing party status was eliminated and replaced with:

> (2) Within 28 days after receipt of the disclosure filed pursuant to subrule (H) by a garnishee of a periodic garnishment disclosing that it does not employ the defendant and is not otherwise liable for periodic payments, or from a garnishee of a nonperiodic garnishment disclosing that it does not hold property subject to garnishment and the defendant is not indebted to the garnishee, the plaintiff shall deduct any costs associated with that garnishment that may have been added to the judgment balance pursuant to MCR 2.625(K), unless the court otherwise directs.

MCR 3.101(R)(2). These are significant changes; they are not mere clarifications. There is no need to delay the effectiveness of a clarification—yet these amendments did not take effect until six months after they were approved. The majority opinion's conclusion that the delayed effect of the amendments was meant to give parties time to adjust to other new procedures is speculative and finds no support in the language of the amendments. *See* Amendments of Rules 2.625 and 3.101 of the Michigan Court Rules, ADM File No. 2016-40, Sept. 27, 2017.

In this context, the majority opinion's conclusion that "these amendments eliminate a lot of guess work" and that "[i]t's almost as if the district court certified the question, and the Michigan Supreme Court answered it" is plainly wrong. Instead, it's almost as if the question was certified to the Michigan Creditor's Bar Association, which answered the assignment. Punting the question to the debt collectors' bar, and its member debt collector in this case, contradicts our published precedent, which requires placing "the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Stratton,* 770 F.3d at 449.

Reliance on a proposed Consumer Financial Protection Bureau (CFPB) rule, which would prohibit lawsuits on time-barred debts only when the debt collector knows or should know that the debt is time-barred, is also unpersuasive. *See* Debt Collection Practices (Regulation F), 84 Fed. Reg. 23,274, 23,403 (proposed May 21, 2019) (to be codified at 12 C.F.R. pt. 1006). Setting aside that "this is a proposed rule" that does "not represent final Bureau interpretations," *id.* at 23,274 n.6, any analogy between whether a debt collector should know that a debt is time-barred and whether Buckles & Buckles should have known that its frontloading practice was unlawful is weak. That is because, for the reasons described above, the relevant rules here make clear that Buckles & Buckles could not represent costs as "now due" before those costs were "now due." MCR 3.101(D) (2014).

The FDCPA itself and the Supreme Court's interpretation of the Act is more relevant than a newly proposed CFPB rule on an inapposite issue. These sources show that we need not inquire whether Buckles & Buckles knew that its practice was unlawful. In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, the Supreme Court reversed our decision and held that the FDCPA's bona-fide-error defense does not apply to violations that result from a debt

collector's mistaken interpretation of the FDCPA.  559 U.S. 573 (2010).  Although the Court did not resolve whether the defense is available for mistakes of state law, *id.* at 580 n. 4, we have explained that *Jerman's* "discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability," *Wise*, 780 F.3d at 713.  The Court has long recognized "the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally."  *Jerman*, 559 U.S. at 581 (quoting *Barlow v. United States*, 7 Pet. 404, 411 (1833)).  Consistent with the idea that Congress intended mistakes of state law to give rise to FDCPA liability, the Court noted that "when Congress has intended to provide a mistake-of-law defense to civil liability, it has" done so "explicitly."  *Id.* at 583.  And it explained that the FDCPA does not confine liability to "'willful' violations, a term more often understood in the civil context to excuse mistakes of law."  *Id.* at 584.  The Court also reasoned that an alternative interpretation of the Act could lead to an "enforcement gap" where "consumers will have little incentive to bring enforcement actions 'where the law [i]s at all unsettled, because in such circumstances a debt collector could easily claim bona fide error of law.'"  *Id.* at 603 (quoting Brief for State of New York et al. as *Amici Curiae*).

In sum, I would affirm the district court's conclusion that Buckles & Buckles made misleading representations in violation of the FDCPA when it communicated that consumers owed costs of current garnishments before those costs actually became due.

As to Buckles & Buckles' practice of representing that it was owed costs from unsuccessful garnishments, I agree with the majority that this practice was a false representation under the FDCPA.  I see no reason to vacate and remand that claim, however, as the district court's order granting Van Hoven's motion in limine should be affirmed.  This court reviews a district court's granting of a motion in limine under the abuse of discretion standard. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012).  "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment."  *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 707 (6th Cir. 2013) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir.2012)).

Under the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The majority opinion emphasizes that Buckles & Buckles claims to have an error-avoidance procedure to prevent factual misrepresentations about the amount of debt consumers owe, but the district court found that Buckles & Buckles had not disclosed any information from which details of their error-avoidance procedure could be gleaned. Although Mr. Buckles attested in an affidavit attached to Buckles & Buckles' summary judgment papers that the firm maintained policies designed to prevent collection of costs deemed non-recoverable, Buckles & Buckles had not previously disclosed that Mr. Buckles would serve as a witness or provided the information disclosed in his affidavit before the close of discovery, despite receiving relevant discovery requests. Buckles & Buckles claims to have produced a document responsive to Van Hoven's request for documents related to its affirmative defense, but did not place that document in the record for the district court's consideration in response to Van Hoven's motion in limine. The court's determination that Buckles & Buckles failed to make any disclosures related to the defense is consistent with the record. The district court therefore did not abuse its discretion in applying Rule 37(c)(1) and concluding that Buckles & Buckles would be foreclosed from introducing evidence related to its affirmative defense at trial.

The district court properly determined that Buckles & Buckles efforts to tax consumers with current court costs before those costs came due or with unrecoverable past costs were misleading representations in violation of the FDCPA. It also correctly granted Van Hoven's motion in limine. These rulings relied on Supreme Court precedent, our published authority, the applicable Michigan Court Rules, and the discretion granted to a trial court. Because I would affirm the decisions below, I respectfully dissent.