RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILLIAM ALEXANDER,

*Plaintiff-Appellant,*

*v.*

No. 15-1265

GERALD E. ROSEN; CHERYL A. MATTHEWS; MICHELLE ENDRES; SUZANNE HOLLYER; DAVID HOFFMAN; LORI SAVIN; MARY KAYE NEUMANN; ILYSSA CIMMINO; M. BELILL,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-12249—Sean F. Cox, District Judge.

Decided and Filed: October 30, 2015

Before: SUHRHEINRICH, SUTTON, and COOK, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** David N. Asmar, OAKLAND COUNTY CORPORATION COUNSEL, Pontiac, Michigan, for Appellees Matthews, Endres, Hollyer, Hoffman, Savin, Neumann, and Cimmino. William Alexander, Detroit, Michigan, pro se.

_____

### OPINION

_____

SUTTON, Circuit Judge. William Alexander filed a complaint in federal court, alleging that he was the victim of a conspiracy concocted by a federal judge, a Michigan family court judge, and several state administrative employees. The district court dismissed the complaint because it raised issues related to Alexander's child support obligations—and thus implicated

1

domestic relations matters that the federal judiciary typically cedes to state courts. But the Supreme Court has told us that the domestic relations exception to federal jurisdiction is a narrow one, *see Ankenbrandt v. Richards*, 504 U.S. 689, 701–04 (1992), and this case does not fall within its confines. We nonetheless affirm the district court's decision to dismiss Alexander's complaint, because he has not stated a claim for which relief can be granted.

Alexander claims that nine individuals—all of whom had some connection to child support proceedings related to Alexander's son—conspired against him and violated his civil rights. According to Alexander, these individuals (1) imposed child support obligations that he did not owe; (2) provided false information about those obligations to the IRS; and (3) "extort[ed]" money from him through "bribery" and "terror tactics." R. 1 at 75–76. To combat these alleged injustices, Alexander filed this lawsuit in federal court, claiming violations of the federal racketeering statute, federal civil rights law, and numerous state laws. Among other relief requested, Alexander asked that his child support payments "be abated." R. 1-1 at 11.

The district court dismissed the claims against the federal district judge and the state court judge on grounds of absolute judicial immunity. It dismissed the remaining federal claims after finding that they fell within the domestic relations exception to federal jurisdiction. And it declined to exercise supplemental jurisdiction over Alexander's state law claims. Alexander appeals.

The domestic relations exception precludes federal courts from hearing cases that "involv[e] the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt*, 504 U.S. at 704. Although several circuits have held that the exception applies only to diversity (rather than federal question) cases, we have not addressed that issue since the Supreme Court clarified the exception's contours in its 1992 decision in *Ankenbrandt*. *Compare United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997); *and Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946–47 (9th Cir. 2008), *with Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006); *see also Firestone v. Cleveland Tr. Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) (stating, pre-*Ankenbrandt*, that the domestic relations exception applies in federal question cases). We need not address the point

today because, even if the exception applies to federal question actions like this one, Alexander's claim exceeds the limited grasp of the exception.

The domestic relations exception applies only to a "narrow range" of cases, *Ankenbrandt*, 504 U.S. at 701, and it "does not deprive federal courts of jurisdiction to adjudicate a claim . . . unless a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, or child-custody decree." *Chevalier v. Estate of Barnhart*, No. 14-3146, 2015 WL 5729456, at *5 (6th Cir. Oct. 1, 2015) (citation omitted). That description does not capture Alexander's complaint, because he does not request that we issue a "divorce, alimony, or child custody" decree or that we "modify or interpret an existing" decree. He instead requests that we apply federal law to determine whether the officials overseeing his child support case conspired against him—an inquiry that does not require us to apply Michigan child custody law, question the state's calculation of child support payments, or otherwise address the merits of the underlying dispute. We may thus resolve Alexander's claims without entangling ourselves in difficult questions of state family law, which is what the domestic relations exception was designed to prevent. *See Ankenbrandt*, 504 U.S. at 703–04.

*Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *abrogated on other grounds by Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006), buttresses this conclusion. Catz alleged that his divorce proceedings in Arizona court violated constitutional due process guarantees. *Id.* at 289. We held that the case did not fall within the domestic relations exception because Catz was not seeking "a declaration of marital or parental status"; he was simply raising "a constitutional claim in which it [wa]s incidental that the underlying dispute involve[d] a divorce." *Id.* at 291. Even though Catz requested that we nullify the Arizona divorce decree, he was not asking us to "address the merits, or ultimately dispose, of [the] divorce petition." *Id.* So it is here. Alexander claims that various state actors violated federal law. The fact that they did so *in the course of* deciding his child support obligations is immaterial. The case raises the same questions that would arise if he alleged that the IRS and judges of the Tax Court had conspired to deny him a refund, or that executive officials and a federal judge (in a patent case, say) had conspired to deprive him of federal rights. The underlying substance of this case—the fact that it happens to arise in the domestic relations context—does not affect our analysis of whether the

defendants engaged in the charges here:  racketeering and conspiracy.  *See also Holloway v. Bush*, 220 F.3d 767, 779 (6th Cir. 2000) (en banc); *Chevalier*, 2015 WL 5729456, at *5–7.

It is true that Alexander asks us to "abate[]" his child support payments.  *See* R. 1-1 at 11. But just as Catz's request that we nullify his divorce did not prevent us from taking jurisdiction, *see* 142 F.3d at 291, Alexander's desired relief does not alter the character of his case, which presents standard questions of federal conspiracy and civil rights law.  *See Ankenbrandt*, 504 U.S. at 704; *Chevalier*, 2015 WL 5729456, at *5–6; *see also* 13E Wright, et al., Federal Practice and Procedure § 3609.1 (3d ed. 2015).  Unlike the plaintiff in *McLaughlin v. Cotner*, 193 F.3d 410, 414 (6th Cir. 1999), who asked us to construe the terms of her divorce decree, Alexander simply asks us to construe federal law, a task that (on most days) we are well equipped to perform.  The domestic relations exception did not preclude the district court from hearing this case.

That is not the only jurisdictional ground raised for dismissing this case.  The defendants also invoke the *Rooker-Feldman* doctrine, which prevents federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see In re Smith*, 349 F. App'x 12, 17–18 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part).  That doctrine does not apply here, because Alexander's alleged injury did not emerge from the state court *judgment*.  He does not appeal the state court's child support decision; he challenges the conduct of the individuals who happened to participate in that decision.  *See Skinner v. Switzer*, 562 U.S. 521, 531–33 (2011).

For similar reasons, this case does not call for abstention under the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971).  Alexander raises federal questions that do not entangle us in the merits of the state child support proceedings, and accordingly we may answer them without treading on protected state interests.  *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  And unlike other cases where we have abstained from addressing child support issues, Alexander does not ask us to regulate "the day-to-day conduct of state hearings," assess the constitutionality of procedures used in those

hearings, or opine on the merits of the child support determination. *See Tindall v. Wayne Cty. Friend of Court*, 269 F.3d 533, 539–40 (6th Cir. 2001); *Kelm v. Hyatt*, 44 F.3d 415, 418–21 (6th Cir. 1995); *Mann v. Conlin*, 22 F.3d 100, 101–03, 105–06 (6th Cir. 1994); *Sevier v. Turner*, 742 F.2d 262, 269–71 (6th Cir. 1984). This case does not require the sort of "unduly intrusive interference with" a pending state case, *see Sevier*, 742 F.2d at 270, that typically justifies *Younger* abstention.

With this tour of federal jurisdictional doctrines complete, we can turn to the merits of this case. Alexander first alleges that the defendants violated (and conspired to violate) the federal racketeering statute, *see* 18 U.S.C. § 1962(c), (d), a claim that may succeed only if he pleads "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012). Even construing Alexander's *pro se* pleadings charitably, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), we cannot find, after a painstaking review of his 195-page complaint, claims of racketeering activity. He alleges in conclusory fashion that the defendants engaged in mail fraud, wire fraud, bribery, and extortion, all of which constitute "racketeering" under federal law, *see* 18 U.S.C. § 1961(1). Boiled down, these claims amount to allegations that the defendants did not adequately investigate his case, tolerated procedural irregularities in the state proceedings, and miscalculated his child support obligations. These accusations do not disclose a "scheme or artifice to defraud" (as required for a mail or wire fraud claim, *see* 18 U.S.C. §§ 1341, 1343), a "maliciously threaten[ing]" communication (as required for an extortion claim, *see* Mich. Comp. Laws § 750.213), or a "promise" aimed at inducing certain conduct (as required for a bribery claim, *see id.* § 750.122). Alexander attempts to turn his disagreements with the state court's decisions into evidence of "racketeering," but absent plausible allegations of misconduct or fraud, he has no claim under § 1962(c) or its conspiracy counterpart, § 1962(d). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009).

Alexander's second allegation is that the defendants violated federal civil rights law—specifically, 42 U.S.C. § 1985(2), which prohibits "two or more persons [from] conspir[ing]" to interfere with state judicial proceedings "with intent to deny to any citizen the equal protection of the laws." The Supreme Court, when interpreting an analogous provision of § 1985(3), held that

"[t]he language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Kush v. Rutledge*, 460 U.S. 719, 725 (1983). Although Alexander alludes to his race and draws the "legal conclusion[]" that gender discrimination occurred, he offers no "factual allegations" to suggest that the defendants were motivated by "invidious discrimination." *See Iqbal*, 556 U.S. at 678–81. His § 1985 claim must therefore fail.

With Alexander's federal claims resolved, we must address two remaining issues. First, the district court declined to exercise supplemental jurisdiction over Alexander's state law claims because they "predominate[d]" over the federal claims and created a risk of jury confusion. R. 4 at 1–2; *see* 28 U.S.C. § 1367(c). That decision was not an abuse of discretion, because the court reasonably concluded that the "numerous and wide-ranging" state law claims would be difficult for a jury to sort out. *Blake v. County of Livingston*, 257 F. App'x 848, 855 (6th Cir. 2007); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 951–53 (6th Cir. 2010).

Second, the district court was correct to dismiss two judges from the suit on grounds of absolute immunity. Judges receive such immunity for their "judicial acts," unless performed "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). Alexander's claims, for the most part, challenge paradigmatically judicial acts: assessing fees, issuing an arrest warrant, refusing to issue a stay. And although one judge allegedly engaged in *ex parte* communications with state officials, those communications occurred as part of the judge's attempt to resolve the case before him, which means they are still protected by absolute immunity, *see Forrester v. White*, 484 U.S. 219, 227–28 (1988); *Stump*, 435 U.S. at 363 n.12.

For these reasons, we affirm.