RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SARAH HOHENBERG; JOSEPH HANSON,

        *Plaintiffs-Appellants*,

    *v.*

SHELBY COUNTY, TENNESSEE; DIVISION 14 OF THE SHELBY COUNTY, TENNESSEE GENERAL SESSIONS COURT, CRIMINAL DIVISION,

        *Defendants-Appellees*.

No. 22-5783

─────────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:20-cv-02432—Samuel H. Mays, Jr., District Judge.

Argued: April 27, 2023

Decided and Filed: May 19, 2023

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** William R. Maurer, INSTITUTE FOR JUSTICE, Seattle, Washington, for Appellants. R. H. "Chip" Chockley, SHELBY COUNTY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellees. **ON BRIEF:** William R. Maurer, INSTITUTE FOR JUSTICE, Seattle, Washington, Robert Peccola, Keith W. Neely, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Appellants. R. H. "Chip" Chockley, Katherine L. Frazier, SHELBY COUNTY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellees.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge. Sarah Hohenberg and Joseph Hanson did not maintain their homes or keep them up to code. Unhappy neighbors set the enforcement wheels in motion for

actions in the Shelby County Environmental Court, proceedings that eventually cost them their homes and more.  Hohenberg and Hanson sued Shelby County and the Environmental Court for violating their due process rights.  The district court dismissed their case for lack of jurisdiction under 28 U.S.C. § 1257(a), *see Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and for failing to state a claim.  We reverse the jurisdictional ruling, affirm the failure-to-state-a-claim ruling in part, and remand.

I.

Hohenberg and Hanson owned homes in Memphis, Tennessee.  They did not maintain them.  Hohenberg failed to make repairs after a tree struck her roof.  Hanson let the grass, weeds, and other plants grow wild and allowed trash, debris, and personal property to pile up in his yard.

Neighbors complained.  A nearby homeowner, a neighborhood association, and the State of Tennessee sued Hohenberg in the Environmental Court, a local court that hears "cases involving alleged violations of county ordinances, including . . . environmental ordinances." Shelby Cnty. Ord. Code § 10-605.  They requested damages plus an order compelling her to make repairs.  One of Hanson's neighbors emailed Memphis officials, who charged him with code violations and brought enforcement actions in the Environmental Court.

Things did not go smoothly.  The Court declared Hohenberg's home a public nuisance and ordered her to submit a remediation plan.  When that didn't work, it appointed a receiver. When Hohenberg did not pay the receiver's expenses, the Court ordered her home sold at auction.  Hohenberg refused to leave and kept her belongings in the house, prompting the Court to issue a warrant for her arrest.  She left for Mississippi and declared bankruptcy.  A bankruptcy trustee auctioned off her house, mooting the enforcement action.

Meanwhile, the Court found Hanson guilty of code violations and ordered him to clean up his yard.  The violations recurred, and the Court held him in contempt.  Hanson went to jail. The City of Memphis bulldozed his house, and the Court dismissed his case as moot as well.

Hohenberg and Hanson filed this § 1983 action against the Court and the County.  They claimed that the Court's procedures—including its failure to use Tennessee's Civil and Evidence

Rules, failure to keep complete records of its proceedings, and failure to consider constitutional claims or defenses—kneecapped their appeals and prolonged their cases, violating their rights under the Fourteenth Amendment's Due Process Clause.  The County contributed to the violations when it created, funded, and "fail[ed] to oversee" the Court.  R.16 ¶¶ 98, 152.  The duo sought damages and declaratory relief.

The district court dismissed their complaint.  It ruled that it lacked jurisdiction over most of their claims because they amounted to improper appeals of state court judgments to a district court under 28 U.S.C. § 1257(a).  As for the remaining claims, which concerned lost case files, the court held that they came up short (1) against the Environmental Court because it could not be sued under § 1983 in federal court and (2) against the County because the claims failed as a matter of law.  Hohenberg and Hanson appeal.

## II.

Hohenberg and Hanson sued the Environmental Court and the County, claiming both violated their rights under the Due Process Clause of the Fourteenth Amendment.  Congress has granted the federal courts jurisdiction to resolve federal questions of this sort.  28 U.S.C. § 1331.

Does an exception to this grant of jurisdiction apply?  Only the Supreme Court, not an inferior federal court, has jurisdiction to resolve appeals from "[f]inal judgments or decrees rendered by the highest court[s] of a State."  *Id.* § 1257(a).  *Rooker* holds that this grant of jurisdiction is exclusive, that "no court of the United States other than [the Supreme] [C]ourt" may "entertain a proceeding to reverse or modify" a state court's final judgment.  263 U.S. at 416.  *Feldman* follows suit.  460 U.S. at 482 & n.16.

But this § 1257(a) exception applies only in "limited circumstances."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  Writing for a unanimous Court in *Exxon*, Justice Ginsburg explained that § 1257(a) just deals with "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  That is an "exceedingly narrow" limitation on the jurisdiction of district courts, rarely relevant beyond the unusual fact patterns involving Rooker and Feldman.  *VanderKodde v. Mary*

*Jane M. Elliott, P.C.*, 951 F.3d 397, 400 (6th Cir. 2020); *see Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892 (6th Cir. 2020); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (emphasizing *Rooker-Feldman*'s "limited grasp" (quoting *In re Smith*, 349 F. App'x 12, 18 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part))); *Reed v. Goertz*, 143 S. Ct. 955, 960–61 (2023) (similar).

There are many, many types of lawsuits that this discrete jurisdictional limit under § 1257(a) does not cover.  It is not claim preclusion.  It is not issue preclusion.  It is not, in short, "preclusion by another name."  *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam).  It does not amount to a backstop for 28 U.S.C. § 1738, which entitles state-court judgments to "the same full faith and credit" in federal court that they receive at home.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see Lance*, 546 U.S. at 466.  And it is not an all-purpose abstention doctrine, lying in wait to untangle snarls when state and federal litigation mix.  *Cf.* 28 U.S.C. § 2283; *Younger v. Harris*, 401 U.S. 37, 53–54 (1971); *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976).

Unlike these distinct doctrines, moreover, the *Rooker* and *Feldman* interpretations of § 1257(a) go to our *jurisdiction*, meaning that courts must always and everywhere confront them.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514–15 (2006); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  As the Supreme Court has reminded us nearly once a year for almost two decades, we should not lightly use jurisdictional rules to pinch-hit for non-jurisdictional ones.  *Arbaugh*, 546 U.S. at 514–15; *see, e.g.*, *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497 (2022); *United States v. Kwai Fun Wong*, 575 U.S. 402, 409–10 (2015).

Even these stop signs, by the way, may not fully capture the point.  Commentators have not been kind to the lower courts' extravagant use of *Rooker* and *Feldman* as a "quasi-magical means of docket-clearing."  Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction After* Saudi Basic *and* Anna Nicole, 42 Tulsa L. Rev. 553, 563 (2007); *see, e.g.*, Richard H. Fallon Jr. et al., Hart & Wechsler's The Federal Courts and The Federal System 1410–11 & n.1 (7th ed. 2015) (listing examples); Samuel Bray, *Rooker Feldman (1923–2006)*, 9 Green Bag 2d 317 (2006) (reporting the death of "Rooker Feldman, the legal personality," and expressing the "hope[] that he leaves no survivors").  The Supreme Court, again and again, has

seen fit to prune it back.  *See, e.g.*, *Skinner*, 562 U.S. at 532; *Reed*, 143 S. Ct. at 960–61.  One Justice indeed thought that *Exxon* had brought these jurisdictional disputes to an end, noting that it "finally interred the so-called '*Rooker-Feldman* doctrine.'"  *Lance*, 546 U.S. at 468 (Stevens, J., dissenting).

All told, § 1257(a)'s negative implication requires two unusual things.  It requires a challenged "judgment" in the new action.  *Exxon*, 544 U.S. at 284.  And it requires an effort to "review" that judgment, namely to "undo" or "overturn" it in the new action.  *Id.* at 287 & n.2, 293.

Today's lawsuit does not satisfy either requirement.  Claimants' injuries do not stem from state-court "judgments."  They mainly argue that the Environmental Court dragged out the proceedings and complicated them, all the while costing them time, money, and effort.  *Bleak House*, yes.  *Rooker-Feldman*, no.  These claims target ancillary litigation expenses rather than the application of law to fact, a burden falling outside § 1257(a)'s limited orbit.  *Cf. Marks v. Tennessee*, 554 F.3d 619, 623 (6th Cir. 2009) (refusing to apply § 1257(a) to claim for "pain and suffering" from litigant's appearance in court).

The claims arising from the missing files suffer from a similar problem.  The plaintiffs accuse the Environmental Court of losing their case records, hobbling their appeals.  But that's a delay-inducing fumble, not an erroneous judgment.  *VanderKodde*, 951 F.3d at 402; *see United States ex rel. Tucker v. Seaman*, 58 U.S. 225, 231 (1854).

What of the claims that the County acquiesced in the Court's misconduct when it created it, funded it, and failed to rein it in?  Those allegations target "independent" policy missteps by the County, not court judgments.  *Alexander v. Rosen* confirms the point.  804 F.3d 1203 (6th Cir. 2015).  A father sued a state judge and eight others, alleging that they conspired to increase his child-support obligations.  *Id.* at 1204–05.  Section 1257(a) did not bar his action, we held, as it focused on antecedent wrongdoing—the conspiracy—not a judgment.  *Id.* at 1206–07.  The same holds true of claimants' action against the County.  Claimants challenge the allegedly wrongful actions and omissions that led to their judgments, not the judgments themselves.  *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007).

That's one problem.  The second problem is that plaintiffs' claims do not seek "review and rejection" of state-court judgments.  *Exxon*, 544 U.S. at 284.  That reality becomes clear when we look at the relief the claimants seek in this federal-court action:  damages and a declaratory judgment.

Damages would not amount to "review and rejection" of any of the judgments binding the claimants.  *Id.*  The Environmental Court did not award anyone monetary relief.  It appointed receivers, ordered sales of property, held claimants in contempt, and so on.  Awarding claimants damages would not void those judgments or otherwise "reject" anything.  *Id.*  As we have said before, a complaint demanding "compensatory damages" does not "seek review or reversal" of a court order awarding relief not measured by money.  *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 309–10 (6th Cir. 2010); *accord Marks*, 554 F.3d at 623.

Turn to the request for a declaratory judgment.  The plaintiffs seek a declaration "that Defendants' systematic policies, practices, and customs violated" their rights.  R.16 ¶ A.  That claim would not void or reject any particular judgment.

Putting the points differently, § 1257 deals with appeals of state-court judgments, and Hohenberg and Hanson have not appealed anything.  They seek monetary damages and declaratory relief under § 1983, a demand they did not make in the Environmental Court.  *See* Tenn. Code Ann. § 16-15-501(a), (d)(1); 17 Tenn. Juris. §§ 13–14, 16 (2022).  Their complaint seeks relief against the County and the Court, not the plaintiffs who instigated their Environmental Court litigation.  An action seeking new relief against new parties does not have any of the characteristics of an "appeal" and does not seek to "reject" a prior state-court judgment.  *See, e.g.*, *Payne v. Niles*, 61 U.S. 219, 221 (1857) ("[I]t is very well settled in all common-law courts, that no one . . . [can] be made a defendant in [a] writ of error, who was not a party to the judgment in the inferior court.").

Defendants raise several contrary arguments.

Defendants say that claimants' legal theories call the Environmental Court's orders into question.  True or false, that is not the test.  Section 1257(a) does not create a jurisdictional preclusion doctrine.  It applies only when a state-court loser seeks "review and rejection" of a

specific prior judgment, not when his victory would undermine a judgment's legal underpinnings. *Exxon*, 544 U.S. at 284. At any rate, much of claimants' case does not question specific court orders. Proving an entitlement to nominal damages or declaratory relief would not require review or rejection of any particular judgment or decree. As for compensatory damages, claimants' contention that the Court's processes harmed them—perhaps by prolonging their proceedings or adding to their legal bills—does not require them to complain about, let alone appeal, a judgment.

*Brent v. Wayne County Department of Human Services* does not say otherwise. 901 F.3d 656 (6th Cir. 2018). A father claimed that a state-court judge "rubber stamped" an adverse custody order, depriving him of his son. *Id.* at 674. He sought damages and a declaratory judgment that the order was unlawful. *Id.* at 674–75; *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, No. 5:11-cv-10724, Compl. (Dkt. 1) ¶¶ 2–3, 29–30, 195 (E.D. Mich. Feb. 22, 2011). Section 1257(a) applied, we said in dictum, because the two proceedings were "inextricably intertwined." *Brent*, 901 F.3d at 674. But *Brent* did not discuss the problem above or distinguish between the declaratory relief the father sought—which, impermissibly, asked the court to declare a specific custody order unlawful—and his request for damages. *Id.* at 674–75. Neither did the *Brent* litigants. *Brent*, No. 17-1811, Appellant's Br. (Dkt. 33) at 30–31 (6th Cir. Nov. 22, 2017); *see also id.*, Appellee's Br. (Dkt. 42) at 27–30 (declining to discuss *Rooker-Feldman*). In *Exxon*, the Court pointedly ignored the phrase "inextricably intertwined," suggesting an imminent retirement date. *Exxon*, 544 U.S. at 286 & n.1; *see Skinner*, 562 U.S. at 531–32; *Reed*, 143 S. Ct. at 960 (declining to use the phrase); *Fieger v. Ferry*, 471 F.3d 637, 642–43 (6th Cir. 2006) (citing cases).

*Market v. City of Garden City* does not help defendants either. 723 F. App'x 571 (10th Cir. 2017). An ex-prisoner sued a city for her DUI conviction under a city ordinance, seeking damages plus a declaration that the conviction was unlawful. *Id.* at 571–72. The Tenth Circuit rejected the challenge, reasoning that money damages "attempt[ed] to put [the ex-prisoner] in the position [she] would be in without the faulty imprisonment." *Id.* at 574. That conclusion conflicts with our own decision in *Kovacic*, and it is distinguishable from today's to boot. In *Market*, the ex-prisoner sued the city, her presumptive adversary in the criminal proceedings. By

contrast, today's claimants seek damages from the Court and the County, neither of which were parties to claimants' litigation in the Environmental Court. An action seeking damages from a third party does not "reverse or 'undo'" a prior judgment any more than an action for contribution or indemnification does. *Id.* (quotation omitted).

### III.

That brings us to the Environmental Court's alternative defense: that, as an arm of the State of Tennessee, it may not be sued under § 1983. Section 1983 creates liability for "persons" who deprive others of federal rights under color of law. Only a "person" faces liability under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

In a related setting, *Will* held that States and state agencies are not "persons" within the meaning of § 1983 for several reasons. One, the text of the statute favored this interpretation. Congress did not treat States or state agencies as "persons" when it enacted § 1983. *Id.* The 1871 Dictionary Act, passed months before § 1983, defined "person" to include natural persons and "bodies politic and corporate." Act of Feb. 25, 1871, § 2, 16 Stat. 431. The latter phrase refers to private corporations and at most municipal governments, entities that exercise powers under corporate or municipal charters but not as constitutional sovereigns. *Will*, 491 U.S. at 69 & n.9; *see id.* at 64. Two, the federalism canon favored this interpretation because the Court does not casually construe statutes to alter the balance between national and state power. *Id.* at 65; *see Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Lawsuits against States do just that by undermining their autonomy and authority. *Alden v. Maine*, 527 U.S. 706, 750 (1999). Three, § 1983 does not displace sovereign immunity or other traditional common-law immunities. *Quern v. Jordan*, 440 U.S. 332, 342–43 (1979); *Will*, 491 U.S. at 66. Because sovereign immunity shields States from being sued in federal court, it would be odd for § 1983 to create a right that sovereign immunity immediately takes away. *See Will*, 491 U.S. at 66–67.

Under these same principles, the Environmental Court is not a "person" under § 1983. For one, "person's" semantic content suggests as much. The Environmental Court is not a natural person, and it is not a "bod[y] politic [or] corporate." Act of Feb. 25, 1871, § 2, 16 Stat. 431. Even if "person" extends to "corporations, both private and public," as *Will* held, 491 U.S.

at 69 & n.9, courts are not private or public corporations. They "exercise . . . judicial power, by the proper officer or officers, at a time and place appointed by law." *United States v. Clark*, 25 F. Cas. 441, 442 (C.C.D. Mass. 1813) (Story, J.); *Todd v. United States*, 158 U.S. 278, 284 (1895) (quoting *Clark*). All of this explains why we have held that "a court"—in that case the Akron municipal court—"is not a 'person' within the meaning of § 1983." *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988) (per curiam).

The Environmental Court also operates as an organ of the State of Tennessee rather than of a "body politic or corporate." Its powers and responsibilities flow from Tennessee's Constitution and laws, not from a corporate or municipal charter. As part of the General Sessions court, the Environmental Court exercises the Volunteer State's "judicial power." Tenn. Const. art. VI, § 1; *see State ex rel. Boone v. Torrence*, 470 S.W.2d 356, 364 (Tenn. Ct. App. 1971); *Duncan v. Rhea Cnty.*, 287 S.W.2d 26, 30 (Tenn. 1955). State statutes delimit the Court's jurisdiction and many of its procedures. *See, e.g.*, Tenn. Code Ann. § 16-15-501(a), (c)(1), (d)(1) (jurisdiction); *id.* § 16-15-721 (rules of evidence). And superior Tennessee courts, up to the Tennessee Supreme Court, hear appeals from its judgments. *Id.* § 27-5-108(a); *State ex rel. Gibbons v. Club Universe*, No. W2004-02761, 2005 WL 1750358, at *2 (Tenn. Ct. App. July 26, 2005).

Turn to traditional federalism and immunity principles, "presuppositions of our . . . history" that § 1983 honors. *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951); *see Will*, 491 U.S. at 65–67. Lawsuits against state courts, like laws regulating state judges, strike at the heart of state sovereignty. *Gregory*, 501 U.S. at 460. Only a clear indication of statutory meaning warrants subjecting state courts to such lawsuits.

Section 1983 actions against the Environmental Court also would clash with core sovereign immunity principles. "[C]ase after case" describes state courts, including local courts like this one in Michigan and Ohio, as arms of the State and beneficiaries of their State's sovereign immunity. *Laborers' Int'l Union of N. Am. v. Neff*, 29 F.4th 325, 331 (6th Cir. 2022) (citing cases); *see Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 764 (6th Cir. 2010) (Michigan); *Mumford v. Basinski*, 105 F.3d 264, 268 (6th Cir. 1997) (Ohio); *Ward v. City of Norwalk*, 640 F. App'x 462, 465–66 (6th Cir. 2012) (Ohio). We know of no case charting a different course. As

the Court observed in *Will*, it is difficult to understand why § 1983 would create a right to sue an entity that could always assert immunity from suit.  491 U.S. at 66–67.

Hohenberg and Hanson push back.  They say that the Environmental Court is an arm of Shelby County, not the State of Tennessee, making it a § 1983 "person."  *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978).  But we rejected a similar argument in *Walsh*, 864 F.2d at 418–19, and it has no more force today.

It does not matter that Tennessee law sometimes treats the Environmental Court as a county entity.  For one thing, it sometimes doesn't.  *See, e.g.*, *Hancock v. Davidson Cnty.*, 104 S.W.2d 824, 826 (Tenn. 1937) ("[A] justice of the peace, in the exercise of strictly judicial functions, is a state officer . . . . [T]he same must be said of [municipal court judges] who succeed to [their] jurisdiction and authority.").  For another, the meaning of "person" under § 1983 turns on federal, not state, law.  *See, e.g.*, *Will*, 491 U.S. at 95–98.

It does not matter that Shelby County funds the Court.  It does so in accordance with a state statute requiring as much, *see* Tenn. Code Ann. § 16-15-102(a), and at any rate the Court's receipt of County funds does not outweigh the other factors making it a State entity, *Neff*, 29 F.4th at 330 (explaining as much in the sovereign-immunity context).

It does not matter that Shelby County's voters, rather than the State of Tennessee's voters, pick the Environmental Court's judges.  A similar reality holds for every Tennessee inferior court judge, who "shall be elected by the qualified voters of the district or circuit to which they are to be assigned."  Tenn. Const. art. VI, § 4.  Once again, local elections do not counterbalance the other factors that paint the Court as an instrumentality of the State.  *See Pucci*, 628 F.3d at 763.

All told, because the Environmental Court is not a "person" and because it is instead an arm of the State, claimants' § 1983 action against it fails.

## IV.

The County separately argues that the claimants have not pleaded a plausible § 1983 claim against it.  It contends that the Environmental Court did not violate anyone's rights and

that, even if it did, County policy had nothing to do with it.  *See Monell*, 436 U.S. at 692.  But the district court did not consider these arguments, and we decline to take a first swing at them on appeal.  *Harrison v. Montgomery Cnty.*, 977 F.3d 643, 652 (6th Cir. 2021).  While the district court held that the claimants had not pleaded a plausible case that County policy caused the loss of their case files, it did so on the assumption that it lacked jurisdiction over the rest of their complaint.

We close with two observations about the merits of the federal claim against the County. Due process requires fair proceedings, not formal ones.  *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).  In view of that principle, it remains unclear whether Hohenberg and Hanson have pleaded violations of their Due Process rights.  They object, for example, that the Environmental Court failed to follow Tennessee's Civil and Evidence Rules, but the Fourteenth Amendment does not necessarily require compliance with specific rules of procedure or evidence in all settings.  *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 485–89 (1972); *Williams v. New York*, 337 U.S. 241, 249–51 (1949); *Lawton v. Steele*, 152 U.S. 133, 139–41 (1894).  To hold the *County* liable for violations of their rights, moreover, Hohenberg and Hanson must trace those violations to a County policy or practice.  *Monell*, 436 U.S. at 692.  Whether they can do so also remains unclear.  The County created and funded the Environmental Court, but those decisions sit a fair distance from the Court's alleged procedural deficits.

We reverse in part, affirm in part, and remand.