RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

HPIL HOLDING, INC.,

        *Plaintiff-Appellant*,

    *v.*

HARRY ZHANG aka Haining Zhang; STEPHEN BROWN;
ANGELA COLLETTE; DAVID POSTULA; BROWN FAMILY
INVESTMENTS, LTD.; CRANK MEDIA, INC.,

        *Defendants-Appellees*.

No. 25-1595

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
Nos. 1:23-cv-12050; 1:24-cv-10479—Thomas L. Ludington, District Judge.

Decided and Filed:  March 6, 2026

Before:  SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Daniel J. Lehman, THE LAW OFFICES OF DANIEL J. LEHMAN, Farmington
Hills, Michigan, for Appellant.  Devin W. Bone, PAESANO AKKASHIAN, PC, Bloomfield
Hills, Michigan, for Appellees Zhang and Collette.  Dean Elliott, DEAN ELLIOTT, PLC, Royal
Oak, Michigan, for Appellee Brown.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge.  Minority shareholders of HPIL Holding, a Wyoming
corporation, successfully petitioned a state court for the appointment of a receiver.  Three years
later, HPIL filed this lawsuit alleging that the minority shareholders looted the corporation
during the receivership proceeding.  Pointing to the state-court order that appointed the receiver,

the district court dismissed the lawsuit for lack of subject-matter jurisdiction under 28 U.S.C. § 1257(a), which permits disappointed state-court litigants to seek review of state-court decisions in the United States Supreme Court but does not permit them to appeal such decisions to a federal district court. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 463 (1983). Because HPIL did not purport to seek a writ of certiorari or otherwise appeal the state-court appointment of a receiver, because the implied and vanishingly narrow jurisdictional bar under § 1257(a) does not apply, and because the bar does not displace the customary way that federal courts respect prior state court rulings (issue and claim preclusion), we reverse.

I.

Anju Tandon incorporated HPIL Holding in 2004 to sell scarves and handbags. After temporarily shifting the company's focus from selling accessories to providing massages, HPIL returned to the clothing trade in 2014 by purchasing the right to sell merchandise associated with the "World Traditional Fudokan Shotokan Karate-Do Federation." R.55 at 6. In 2018, the corporation purchased a drilling company from Christopher Philbrick in exchange for HPIL common stock. After these ventures failed, HPIL stopped filing public reports. A few months later, the Nevada Secretary of State dissolved the corporation. HPIL relocated to Wyoming and filed Articles of Continuance there, but it otherwise appeared to become largely defunct.

In 2020, minority HPIL shareholder Haining ("Harry") Zhang filed a complaint in Michigan state court, alleging mismanagement by the leadership of HPIL and requesting the appointment of Angela Collette as a receiver. Zhang served his complaint on HPIL's old Nevada address instead of its new Wyoming address. When HPIL failed to respond, a state court issued a default judgment and appointed Collette as receiver. HPIL alleges that Collette and Zhang diluted the corporation's stock. The pair then entered an agreement to sell 92% of the stock to Stephen Brown. The sale agreement indicated that Brown would serve as the CEO of HPIL.

In 2021, Philbrick and two other minority shareholders filed a motion to intervene in the receivership proceedings, claiming that they never received service of process. The state court granted the motion, set aside the default judgment, and dismissed the receivership complaint

because Zhang had failed to serve HPIL. At the same time, the court declined to vacate any of the actions Collette took while acting as HPIL's receiver.

That prompted the three minority shareholders to file derivative counterclaims on behalf of HPIL against Zhang, Collette, and Brown in Michigan state court. The state court dismissed the counterclaims, concluding that the shareholders failed to satisfy two requirements of Wyoming corporate law. They did not continuously hold shares in HPIL for the duration of the receivership proceedings. And they did not file a written demand with an HPIL director before filing the lawsuit.

All of this became a preamble to today's lawsuit. In August 2023, HPIL sued Zhang, Collette, and Brown, as well as two of Brown's business associates and three of his companies, in federal court. Philbrick purported to authorize the corporation to file the lawsuit. In the main, HPIL alleges violations of fiduciary duty, tort law, and the Racketeering Influenced Corrupt Organizations Act as well as an overarching civil conspiracy. The complaint alleges that Zhang and Collette colluded to seize control of HPIL by intentionally failing to provide the corporation with proper notice of the receivership petition. And it alleges that the defendants stole from the corporation and executed a "pump and dump" scheme to fraudulently inflate the share price of its stock. R.4 at 5.

Acting on its own initiative, the district court dismissed the case for lack of subject-matter jurisdiction. HPIL's lawsuit in its view "necessarily require[s] the review" under 28 U.S.C. § 1257(a) of the prior state-court judgments. R.55 at 20. For that reason, it concluded, "the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction." R.55 at 20. HPIL appealed.

## II.

Under 28 U.S.C. § 1257(a), Congress has vested the United States Supreme Court with jurisdiction over "[f]inal judgments or decrees rendered by the highest court[s] of a State" with respect to matters arising under federal law and, by implication, has denied that jurisdiction to the inferior federal courts. *Rooker v. Fidelity Trust Co.* first interpreted § 1257 to create this jurisdictional bar, 263 U.S. at 416, and *District of Columbia Court of Appeals v. Feldman* echoed

*Rooker*. 460 U.S. at 463. The two cases stand for the straightforward proposition that a lower federal court may not entertain a direct appeal "to reverse or modify" the "judgment" of a state court. *Rooker*, 263 U.S. at 416.

But that is all the two cases stand for. *Rooker* and *Feldman* do not create a supplementary doctrine of abstention, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976), a supplementary doctrine of comity, *see R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941), or a supplementary doctrine of federal equity, *see Younger v. Harris*, 401 U.S. 37, 43 (1971). *Rooker* and *Feldman* do not control the claim or issue preclusive effect of state-court judgments. *See* 28 U.S.C. § 1738 (Full Faith and Credit Act); *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1290 (11th Cir. 2018) (Newsom, J., concurring). *Rooker* and *Feldman* do not alter or eliminate the grants of federal-court jurisdiction concurrent with the jurisdiction of state tribunals. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); *Atl. Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970). And, as judges and commentators from all over the map have cautioned, the "*Rooker-Feldman* doctrine" does not create an all-purpose mechanism for clearing dockets. *Hohenberg v. Shelby County*, 68 F.4th 336, 340 (6th Cir. 2023) (quotation omitted); *see, e.g.*, *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 408 (6th Cir. 2020) (Sutton, J., concurring); *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 399 (6th Cir. 2021) (Clay, J., dissenting); *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023) (Menashi, J.); *In re Dorand*, 95 F.4th 1355, 1362 (11th Cir. 2024) (Pryor, C.J.); *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (Easterbrook, J.); *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 409 (7th Cir. 2023) (Kirsch, J., joined by St. Eve., J., dissenting from the denial of rehearing en banc); Stephen I. Vladeck, *The Increasingly "Unflagging Obligation": Federal Jurisdiction After* Saudi Basic *and Anna Nicole*, 42 Tulsa L. Rev. 553, 563 (2007); Samuel Bray, *Rooker Feldman (1923–2006)*, 9 Green Bag 2d 317, 318 (2006) (celebrating *Rooker-Feldman*'s death in a mock obituary); James E. Pfander & Nassim Nazemi, *The Anti-Injunction Act and the Problem of Federal-State Jurisdictional Overlap*, 92 Tex. L. Rev. 1, 38, 58–59 (2013); Raphael Graybill, Comment, *The Rook That Would Be King:* Rooker-Feldman *Abstention Analysis After* Saudi Basic, 32 Yale J. on Regul. 591, 592 (2015) (criticizing lower courts for using *Rooker* and *Feldman* as "a convenient way for courts to discharge suits on

preclusion-*like* grounds without engaging in actual preclusion analysis (often a messy, fact-intensive enterprise).").

*Rooker* and *Feldman* somehow continue to grow even after the Court's aggressive intervention. *See* Hayden Davis, Note, *Reining in* Rooker-Feldman*: The Harmful Effects of Lower Courts' Overextension of the* Rooker-Feldman *Doctrine and What Can Be Done About It*, 44 Rev. Litig. 107, 117 (2024). In *Exxon*, Justice Ginsburg's opinion for a unanimous Supreme Court rejected all but the narrowest conceptions of *Rooker* and *Feldman*. *See* 544 U.S. at 291–93. Yet in the last five years, approximately 7,800 federal cases cited *Rooker* and *Feldman* while fewer than half as many cited *Exxon*. One might have hoped that *Exxon* would deter the inferior federal courts from applying *Rooker* and *Feldman*. But lower federal courts faced with *Rooker-Feldman* arguments dismissed cases at a *significantly higher* rate in the eight years immediately after *Exxon* than the eight years before it. *See* Graybill, *supra*, at 600. And the trend appears to have continued. *See VanderKodde*, 951 F.3d at 405 (Sutton, J., concurring); Davis, *supra*, at 117.

The Supreme Court reads *Rooker* and *Feldman* narrowly. It has dismissed a case on the basis of § 1257(a)'s implied jurisdictional bar just twice—once in *Rooker* and then again in *Feldman*. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). Over the four decades since *Feldman*, the Court has repeatedly declined to apply *Rooker* and *Feldman*. *See, e.g.*, *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 727 (2010) (plurality opinion); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 & n.3 (2002); *Skinner*, 562 U.S. at 532; *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994); *Reed v. Goertz*, 598 U.S. 230, 235 (2023). Time and time again, it has emphasized the eye of the needle that a claimant invoking *Rooker* and *Feldman* must go through, and time and time again it has found the argument wanting. *See, e.g.*, *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam) ("limited doctrine"); *Exxon*, 544 U.S. at 291 ("limited circumstances"); *Skinner*, 562 U.S. at 532 (quoting *In re Smith*, 349 F. App'x 12, 18 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part)) ("limited grasp"). When a court dismisses a case under *Rooker* and *Feldman*, it swims against a powerful doctrinal current.

The Court cabined *Rooker* and *Feldman* for a reason. If extended beyond the specific holdings of the titular cases, the concept would create a jurisdictional law of preclusion. *Lance*, 546 U.S. at 466. That would pervert the ordinary rules of waiver, forfeiture, discovery, and supplemental jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Still worse, it would distort the Full Faith and Credit Act while nullifying "Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts." *Exxon*, 544 U.S. at 283. And it would cause all that harm for no good reason, because anything *Rooker* and *Feldman* can do, preclusion can do better. *See* 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4469.3 (3d ed. 2025). We therefore interpret § 1257(a) to eliminate jurisdiction only over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

## III.

HPIL's suit does not fit within that slender category. One problem is that HPIL does not "complain[] of injuries caused by [a] state-court judgment[]." *Exxon*, 544 U.S. at 284. Recall that *Rooker* and *Feldman* apply only to lawsuits alleging injuries created by a state-court judgment—and for which a writ of certiorari could be sought with respect to the relevant federal question. *See Marks v. Tennessee*, 554 F.3d 619, 623 (6th Cir. 2009). "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Challenges to wrongdoing in the proceedings leading to a judgment do not challenge the judgment itself. *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 893 (6th Cir. 2020); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007).

HPIL alleges that Zhang and Collette intentionally filed the receivership petition without proper service of process, hijacking the corporation to steal from it. That injury emerged not from the state court's receivership decision but from "the conduct of the individuals who happened to participate in that decision." *Alexander v. Rosen*, 804 F.3d 1203, 1207 (6th Cir. 2015). The judgment served only as the means through which the defendants harmed the plaintiff, not as an independent source of harm. *See Todd v. Weltman, Weinberg & Reis Co.*, 434

F.3d 432, 437 (6th Cir. 2006); *Holloway v. Brush*, 220 F.3d 767, 778–79 (6th Cir. 2000) (en banc); *VanderKodde*, 951 F.3d at 403; *cf. Skinner*, 562 U.S. at 532 (*Rooker* and *Feldman* do not bar a lawsuit targeting a statute broadly rather than a prior adverse state judgment grounded in the statute).

When locating the source of an injury, our cases underscore the distinction between judgments and antecedent misconduct in the legal process.  The plaintiff in *McCormick v. Braverman* alleged that the administrator of an estate deliberately failed to make her a party to a receivership proceeding, denying her notice and preventing her from asserting certain property rights.  451 F.3d at 392.  We observed that the plaintiff "d[id] not claim that the state court judgments themselves are unconstitutional or in violation of federal law."  *Id.*  Instead, she asserted "that those state court judgments were procured by certain Defendants through fraud."  *Id.*  HPIL's first set of claims, like the claims discussed in *McCormick*, allege injuries from misconduct during the receivership proceeding, not from the receivership order itself.  *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013).  For the same reason, they are not jurisdictionally barred by *Rooker* and *Feldman*.

HPIL's next set of claims do not complain of injuries caused by a state-court judgment either.  HPIL alleges that Zhang, Collette, and Brown engaged in an unlawful "pump and dump" scheme that looted the corporation and damaged its creditworthiness.  R.4 at 31–40.  The state court's order authorized Collette to act as receiver.  It did not direct or authorize corporate fraud.  *See New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1305 n.9 (9th Cir. 1989) ("Certainly no court is empowered to permit a receiver to steal corporate assets."); *Morley v. Snow*, 75 N.W. 466, 467–68 (Mich. 1898) (holding that the "considerable discretion" granted to a receiver "will not be interfered with, except where some abuse and wrong is manifest").  The independent tortious conduct of a third-party breaks the chain of causation.  *See Powers*, 501 F.3d at 606–10; *United States v. Speakman*, 594 F.3d 1165, 1174 (10th Cir. 2010); *VanderKodde*, 951 F.3d at 408 (Sutton, J., concurring).  Because any injury to HPIL flows not from the state-court judgment but from the independent misconduct of the defendants, § 1257(a) does not deny the district court jurisdiction over these claims.

*Rooker* and *Feldman* do not apply to this case for an additional reason. HPIL's lawsuit does not "invit[e] district court review and rejection" of state-court judgments. *Exxon*, 544 U.S. at 284. To repeat, *Rooker* and *Feldman* recognize that inferior federal courts lack jurisdiction over appellate challenges to specific state-court orders. *Johnson*, 512 U.S. at 1005–06. That a plaintiff's lawsuit "would undermine a judgment's legal underpinnings" implicates preclusion, not jurisdiction. *Hohenberg*, 68 F.4th at 341. HPIL's lawsuit does not attempt to reverse the state court's receivership order. And resolving HPIL's allegations of a pump-and-dump scheme would not require rejection or even review of the state court's order dismissing Philbrick's case under Wyoming's demand requirement.

All told, *Rooker* and *Feldman* do not affect the district court's jurisdiction because HPIL's lawsuit does not appeal anything or for that matter seek a writ of certiorari over anything. Section 1257 eliminates only a disguised form of appellate jurisdiction in the inferior federal courts. In addition to failing to use the word "appeal" or "certiorari" or any equivalent word, HPIL's current lawsuit does not even look like an appeal. It challenges different wrongs from the previous state-court lawsuits. *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021). It requests different forms of relief. *See Williams v. United States*, 1995 WL 21431, at *5 (6th Cir. Jan. 19, 1995) (per curiam) ("This court cannot afford relief where it was not sought in the district court."). And it seeks that relief from different parties. *See, e.g.*, *Payne v. Niles*, 61 U.S. (20 How.) 219, 221 (1857) ("[I]t is very well settled in all common-law courts, that no one . . . [can] be made a defendant in [a] writ of error, who was not a party to the judgment in the inferior court."). All of that means that neither *Rooker* nor *Feldman* nor § 1257 has anything to do with this case.

The district court thought that, because HPIL's lawsuit requests a form of relief that the state court denied to Philbrick, *Rooker* and *Feldman* eliminate federal jurisdiction over this case. That is wrong. *See Todd*, 434 F.3d at 437. That a state-court order "ratified, acquiesced in, or left unpunished" some source of injury does not mean that the state court *caused* the injury. *Buckles & Buckles*, 947 F.3d at 892 (quotation omitted). State courts do not cause injuries by failing to anticipate the misdeeds of third parties. *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

The district court also thought this federal lawsuit amounted to a request for "review and rejection" of the state-court decision, *Exxon*, 544 U.S. at 284, due to the tension between the allegations in this case and the prior state-court judgments. A Wyoming corporation, as the district court saw it, may sue only in its own name if its directors authorize the lawsuit, meaning that hearing a lawsuit by HPIL to sue in this instance would necessarily mean recognizing Philbrick as HPIL's sole director. But when the state court dismissed Philbrick's derivative lawsuit because he had not made a demand to the board of directors, the district court added, the state court implicitly held that Philbrick was not HPIL's sole director. Because this federal lawsuit would cast doubt on an implicit holding of the state court, the district court thought that *Rooker* and *Feldman* applied.

Not so. So long as it presents an "independent claim," HPIL is free to try to "den[y] a legal conclusion that a state court has reached" without facing a § 1257(a) barrier. *Exxon*, 544 U.S. at 293 (quoting *GASH Assocs.*, 995 F.2d at 728 (Easterbrook, J.)). *Rooker* and *Feldman* apply only to attempts to directly reverse a state court's judgment. *Rooker*, 263 U.S. at 414 ("This is a bill in equity to have a judgment . . . declared null and void."); *Feldman*, 460 U.S. at 463; *see RLR*, 4 F.4th at 388. Though HPIL's complaint sought "a 'declaration' that 'void[s]' 'any document granting'" authority to Brown, R.55 at 26–27, HPIL did not seek to void the *judgment*, which—as the district court acknowledged—had already been vacated when the state court dismissed the complaint. Neither *Rooker* nor *Feldman* nor § 1257(a) applies "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 284. Nor does § 1257(a) eliminate jurisdiction over federal lawsuits that brush up against the legal foundations or implicit assumptions of a state-court judgment. *Hohenberg*, 68 F.4th at 341. When the state court dismissed the derivative action, the identity of HPIL's sole director may well have featured in its reasoning. But *Rooker* and *Feldman* eliminate only jurisdiction to "review and reverse" judgments, not to implicitly undermine them. *Exxon*, 544 U.S. at 283. And they speak of judgments, not reasoning. *See, e.g.*, 28 U.S.C. § 1257(a) ("[F]inal judgments or decrees."); *Hohenberg*, 68 F.4th at 341. Anything less is a job for the non-jurisdictional and truly doctrinal requirements of issue and claim preclusion.

We reverse and remand.